**William BYRD, Plaintiff,**

v.

**Catherine M. ABATE, Commissioner of Correction; "John Doe," Correction Officer, Anna M. Kroll Correctional Facility, and David N. Dinkins, Mayor of the City of New York, Individually and in their official capacities, Defendants.**

No. 93 Civ. 1489 (RWS).

United States District Court,
S.D. New York.

May 14, 1997.

As Amended May 21, 1997.

---

Anna Stern, New York City, for Plaintiff.

Paul A. Crotty, Corporation Counsel of the City of New York, New York City (Laura Land Sigal, Assistant Corporation Counsel, of counsel), for Defendants.

## OPINION

SWEET, District Judge.

Individual defendant, Officer Wade Hults ("Hults") has moved to amend his answer to the second amended complaint in order to assert an affirmative statute of limitations defense. For the reasons set forth below, Hults' motion to amend his answer is denied.

### Parties

At the time of the incident which gave rise to this lawsuit, plaintiff William Byrd ("Byrd") was an inmate in housing for the mentally ill at the Anna M. Kross Correctional Facility ("AMKC") on Riker's Island.

Hults is a corrections officer employed by the New York City Department of Corrections. At the time of the incident which gave rise to this lawsuit, Hults was working as a correctional officer at AMKC.

Defendant Catherine M. Abate became the Commissioner of the New York City Department of Correction on April 27, 1992. Defendant David N. Dinkins was the Mayor of New York City at the time plaintiff was injured. Abate and Dinkins are collectively referred to herein as the "Supervisory Defendants."

### Prior Proceedings

Byrd filed the complaint in this Section 1983 action on March 11, 1993. The complaint was amended on December 15, 1993. The Supervisory Defendants filed their answer on October 16, 1993. On June 30, 1994, by stipulation of the parties and pursuant to Fed.R.Civ.P. 42(b), Byrd's supervisory liability claims against Dinkins and Abate were bifurcated from Byrd's claims against Hults. Pursuant to the stipulation of bifurcation, no discovery has been taken regarding supervisory liability.

On March 7, 1996, Byrd's motion to compel discovery pursuant to Rule 37(a) Fed. R.Civ.P. was granted to the extent that defendants were ordered to produce (1) training materials offered to defendant Hults, and (2) materials regarding whether Hults was authorized to leave his post. Defendants were to produce copies of the documents on or before April 6, 1996.

By letter dated April 8, 1996, Assistant Corporation Counsel, ("Corporation Counsel"), attorney for both Hults and the Supervisory Defendants, informed the Court that many of the materials had been located, but that the Department needed additional time to assemble the remaining documents, "if they can be located." On April 9, 1996, plaintiff's counsel wrote to this Court indicating that she had no objection to an extension of the defendants' time to produce said documents, but requesting immediate production of those portions of the documents already located. On April 23, 1996, defendants produced a portion of the material requested, and stated that the materials regarding whether Hults was authorized to leave his post could not be located.

Defendants filed a motion for summary judgment on May 15, 1996. Byrd cross-moved to compel discovery and for sanctions for non-compliance with previous discovery orders of this Court. Byrd's discovery motion was resolved at oral argument on September 11, 1996.

While the motion for summary judgment was pending, Corporation Counsel sent the Court a letter dated September 24, 1996, requesting that Hults be permitted to amend his answer to assert a statute of limitations defense, and that discovery be stayed until the request was decided. The Court denied the stay of discovery.

On October 31, 1996 the defendants' summary judgment motion was denied. *Byrd v. Abate*, 945 F.Supp. 581 (S.D.N.Y.1996).

On November 8, 1996, Corporation Counsel submitted a letter motion renewing the request for permission to amend Hults' answer. Oral argument was heard on January 22, 1996. Further papers were submitted by the parties on March 25, 1996, at which time the motion was considered fully submitted.

### Facts

The facts of this case are laid out in this Court's opinion, dated October 31, 1996, denying defendants' motion for summary judgment, familiarity with which is assumed. *See Byrd*, 945 F.Supp. at 583–84. The relevant facts for purposes of ruling on the present motion are as follows.

In October 1991, Byrd was in the custody of the New York City Department of Corrections for parole violation and was confined on Riker's Island. Late in the evening of October 3, 1991, or early in the morning of October 4, 1991, Byrd was transferred to a cell located in the Lower 3 housing area, pursuant to a social worker's recommendation that he should be observed for signs of mental illness. All the inmates in this housing area have been determined to suffer from some type of mental illness and to require observation.

On the morning after his arrival, October 4, 1991, Byrd was watching television in the recreation room of the Lower 3 housing area. Shortly after Byrd's arrival in the recreation room, another inmate entered the area and assaulted Byrd, injuring his left eye and causing it to be removed from the socket. As a result of the loss of his left eye, the vision in Byrd's right eye is deteriorating. Byrd's assailant has never been identified. Byrd had not had any disputes with other inmates, he had not incited or provoked the inmate who assaulted him, and is unaware of why any other inmate would want to harm him.

The attack took place while Byrd and his assailant were under the watch of Officer Hults. Hults was stationed at the "C post" in order to observe the recreation room. Hults left his post in order to relieve the correction officer stationed at the "A post" so that the officer could take a "personal" to go to the restroom. The recreation room is visible from the A post, but Hults was not watching Lower 3 through the windows of the booth.

Byrd filed a complaint pursuant to § 1983 based on this attack. This initial complaint named as defendants the Commissioner of the New York City Department of Correction, the Warden and Deputy Warden of Riker's Island, the Mayor of New York City, and "John Doe," a Correction Officer. The complaint was amended on December 15, 1993, ("First Amended Complaint"), to name the Commissioner, the Mayor, and "John Doe", a Correction Officer as defendants. On September 16, 1993, the parties stipulated to extend the defendants' time to answer the complaint until October 16, 1993. Corporation Counsel filed an answer on behalf of the Supervisory Defendants at that time.

In January of 1994, plaintiff's counsel began attempts to discover the name of the John Doe defendant officer. First she verbally requested disclosure of the officer's identity. Upon being informed that Corporation Counsel was unaware of the officer's name, plaintiff's counsel requested log books in order to discover who was on duty at the time the plaintiff was assaulted.

Corporation Counsel refused to make any disclosure or to turn over records until either Byrd agreed to bifurcate the trial or bifurcation was determined by motion to the Court. The Court issued an order of bifurcation on

June 30, 1994. Discovery regarding municipal liability was stayed pending the outcome of the claims against the individual officer. Despite the resolution of the bifurcation issue, Corporation Counsel did not reveal the name of the individual officer, nor turn over log books, as had been requested by plaintiff's counsel.

On November 12, 1994, Byrd served Corporation Counsel with a Notice of Deposition for the "John Doe" Correction Officer to be held on December 6, 1994. The deposition did not take place. On January 3, 1995, plaintiff's counsel reminded Corporation Counsel of the need to conduct a deposition, and to learn the identity of the officer. Corporation Counsel promised to produce the correction officer in February. Finally, on January 12, 1995, Corporation Counsel revealed the officer's name and stated that Corporation Counsel would accept service on his behalf.

On February 27, 1995, plaintiff's counsel served Hults. On March 21, 1995, Hults served his answer upon plaintiff asserting only two defenses: failure to state a claim upon which relief can be granted and qualified immunity.

*Discussion*

According to Hults, the statute of limitations defense is available because Byrd's Second Amended Complaint was filed and served after the statute of limitations had run. Hults contends that the Second Amended Complaint does not relate back to the original complaint because the requirements set forth in Fed.R.Civ.P. 15(c) are not met.[1]

Hults also asserts that his motion to amend satisfies the requirements of Rule 15(a): the amendment has not been unduly delayed, will not prejudice the plaintiff, is not

---

1. Rule 15(c) states in relevant part:
   *Relation Back of Amendments.* An amendment of a pleading relates back to the date of the original pleading when . . .
   (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or
   (3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied

and, within the period provided by rule 4(m) for service of the summons and complaint, [120 days], the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party. Fed.R.Civ.P. 15(c) (West 1997).

requested in bad faith, and, most significantly, is not futile. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

Because the Second Amended Complaint does in fact relate back to the original complaint, the statute of limitations defense is unavailable, such an amendment would be futile, and Hults' motion to amend is therefore denied.

### a. *Statute of Limitations for § 1983*

■ There is no federal statute of limitations for section 1983 actions. Accordingly, a court must "borrow" the limitations period from the most appropriate or analogous state statue. *Board of Regents v. Tomanio*, 446 U.S. 478, 483–84, 100 S.Ct. 1790, 1794–95, 64 L.Ed.2d 440 (1980); *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975). New York's three-year period for unspecified personal injury actions set forth in N.Y.Civ. Pract.L. & R. § 214(5) governs § 1983 actions in New York State. *Owens v. Okure*, 488 U.S. 235, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989), *aff'g*, 816 F.2d 45 (2d Cir.1987); *Leon v. Murphy*, 988 F.2d 303, 309 (2d Cir.1993).

■ The date of accrual of a section 1983 claim, however, is governed by federal law. *See Morse v. University of Vermont*, 973 F.2d 122, 125 (2d Cir.1992). Such claims accrue when the plaintiff "knows or has reason to know of the injury which is the basis of his action." *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir.1980).

■ Byrd's section 1983 claim accrued on October 4, 1991, the date he was attacked and injured. Accordingly, the limitations period on this claim expired on October 4, 1994. Hults was served with the Second Amended Complaint on February 27, 1995, four months after lapse of the limitations period.

### b. *Requirements for Amendment of Pleadings as Set Forth in Fed. R.Civ.P. 15(a)*

Rule 15(a) provides that leave to amend a pleading "shall be freely given when justice so requires."[2] The Supreme Court has interpreted Rule 15 to permit such amendments only when: (1) the party seeking the amendment has not unduly delayed, (2) that party is not acting in bad faith or with a dilatory motive, (3) the opposing party will not be unduly prejudiced by the amendment, and (4) the amendment is not futile. *Foman*, 371 U.S. at 182, 83 S.Ct. at 230; *see Mackensworth v. S.S. Am. Merchant*, 28 F.3d 246, 251 (2d Cir.1994); *Chan v. Reno*, 916 F.Supp. 1289, 1302 (S.D.N.Y.1996).

■ A motion to amend may be denied as futile if the amended pleading fails to state a claim or defense. *See, e.g., S.S. Silberblatt, Inc. v. East Harlem Pilot Block*, 608 F.2d 28, 42 (2d Cir.1979); *Freeman v. Marine Midland Bank–New York*, 494 F.2d 1334, 1338 (2d Cir.1974); *McNally v. Yarnall*, 764 F.Supp. 853, 855 (S.D.N.Y.1991).

Hults' motion to amend fails to meet the fourth requirement of Rule 15(a); it fails to set forth a viable defense. The statute of limitations defense which Hults seeks to add to his answer is not available, because Byrd's Second Amended Complaint satisfies the relation back requirements set forth in Rule 15(c).

### c. *Requirements for Relation Back as Set Forth in Fed.R.Civ.P. 15(c)*

Rule 15(c), Fed.R.Civ.P., provides that an amendment changing the name of a defendant relates back to the original pleading if the claims against the new party arise out of the same conduct or occurrence set forth in the original pleading, and, within 120 days of filing the original complaint, the new defendant (1) had received such notice of the action that he will not be prejudiced in main-

---

2. Rule 15(a) states in relevant part:

*Amendments.* A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires ...
Fed.R.Civ.P. 15(a) (West 1997).

taining his defense on the merits, Fed. R.Civ.P. 15(c)(3)(A), and (2) knew or should have known that, but for a mistake concerning the identity of the proper party the action would have been brought against him, Fed.R.Civ.P. 15(c)(3)(B). *See Soto v. Brooklyn Correctional Facility,* 80 F.3d 34, 35 (2d Cir.1996); *Scott v. Coughlin,* 944 F.Supp. 266, 270 (S.D.N.Y.1996); *Candelaria v. Coughlin,* 1997 WL 171256 *5 (S.D.N.Y. April 10, 1997).

### i. *Mistake*

■ According to Hults, Byrd's Second Amended Complaint does not relate back because Byrd's inability to discover Hults' name before the running of the limitations period is not a "mistake," as that term is defined in *Barrow v. Wethersfield Police Department,* 66 F.3d 466 (2d Cir.1995), *modified,* 74 F.3d 1366 (2d Cir.1996).

In *Barrow,* the Second Circuit held that the amended complaint could not relate back because the failure to provide the individual defendants' actual names did not constitute a "mistake" within the meaning in Rule 15(c)(3)(B). The Court held that a mistake in a defendant's identity occurs when it is the result of "misnomer or misidentification", or when a plaintiff omits the individual defendant altogether, in the erroneous belief that suing a government department will suffice. *Id.* at 469, *as modified,* 74 F.3d at 1366. The Court stated:

> Rule 15(c) explicitly allows the relation back of an amendment due to a "mistake" concerning the identity of the parties (under certain circumstances), but the failure to identify individual defendants when the plaintiff knows that such defendants must be named cannot be characterized as a mistake.

*Id.* at 470, *as modified,* 74 F.3d at 1367.

The *Barrow* plaintiff had filed a complaint against the city police department, alleging that certain unidentified police officers used excessive force in effecting his arrest in violation of § 1983. The district court ordered the inmate to amend his complaint by adding the individual officers as defendants, and directed the plaintiff to "make every effort to obtain the names of police officers who participated" in his arrest. *Id.* at 467. The

plaintiff added the individual defendants in an amended complaint filed after the deadline set by the court, but identified them only as "John Doe". The Police Department consequently refused to accept service of the amended complaint on behalf of the unknown officers. The plaintiff again amended his complaint to name the defendant officers, who were then served almost two years after the statute of limitations had run. The district court granted the defendant officers' motion to dismiss on statute of limitations grounds because the plaintiff "made no showing that the six individual defendants had even constructive knowledge of the claims against them within 120 days of the court's receipt of the initial complaint" as required by Rule 15(c). *Id.* at 467. As described above, the Second Circuit affirmed.

Byrd's circumstances are distinguishable from those presented in *Barrow.* The *Barrow* plaintiff disregarded an explicit direction from the court to obtain the officers' identities. He failed to make any efforts to discover their names until well after the statute of limitations had run. In contrast, Byrd made a series of efforts to obtain the identity of the individual officer without prompting, and well before the end of the limitations period. Byrd's counsel requested the officer's name in January 1994, nine months prior to the end of the limitations period. Corporation Counsel stated that the name of the officer was not yet known. Byrd's counsel then requested the prison's log books in order to determine the name of the officer on duty when Byrd was attacked. Corporation Counsel refused to make any disclosure until the trial of the individual officer was bifurcated from trial of the Supervisory Defendants. That issue was resolved by Court order on June 30, 1994, four months before the end of the limitations period. However, Corporation Counsel failed to disclose the defendant officer's identity until January 12, 1995, almost three months after the limitations period had run.

The *Barrow* Court had ruled that "the failure to identify individual defendants when the plaintiff knows that such defendants must be named cannot be characterized as a mistake". *Barrow,* 66 F.3d at 470, *as modi-*

*fied,* 74 F.3d at 1367. In Byrd's case, it was the defense, rather than the plaintiff, who failed to identify the individual defendant despite Byrd's requests for that information. The identity of Hults was information uniquely within the knowledge of Corporation Counsel. Byrd, a mentally ill inmate who had been transferred to the prison housing area only 24 hours before the attack, did not have access to Hults' name. Byrd's counsel could obtain Hults' identity only from Corporation Counsel. Byrd's counsel requested that information prior to the end of the limitations period, but Corporation Counsel did not comply until after the limitations period had run. To hold that Rule 15(c) does not permit relation back in such circumstances would permit defense counsel to eliminate claims against any John Doe defendant merely by resisting discovery requests until the statute of limitations has ended.

### ii. *Notice, Lack of Prejudice and Knowledge*

■ Byrd's situation is further distinguishable from *Barrow,* because, unlike the *Barrow* defendants, Hults had sufficient notice and knowledge that he would be named as a defendant in the action. The *Barrow* district court dismissed the plaintiff's claim on statute of limitations grounds because "[plaintiff] had made no showing that the six individual defendants had even constructive knowledge of the claims against them within 120 days of the court's receipt of the initial complaint." *Barrow,* 66 F.3d at 467 (citing *Barrow,* No. N–90–571 (JAC) (D.Conn. June 10, 1992)). Byrd, on the other hand, has shown that Hults had constructive notice and

sufficient knowledge to meet the requirements of Rule 15(c).[3]

Rule 15(c)(3) requires that within 120 days of filing the original complaint, the new defendant (A) had received such notice of the action that he will not be prejudiced in maintaining his defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.

[7] Notice of the allegations against Hults may be imputed to him because both he and the Supervisory Defendants are represented by the same attorney. Notice of a lawsuit can be imputed to a new defendant state official through his attorney, when the attorney also represents the officials originally sued. *Scott v. Coughlin,* 944 F.Supp. 266, 270–71 (S.D.N.Y.1996); *see Hood v. City of New York,* 739 F.Supp. 196, 199 (S.D.N.Y. 1990); *Hodge v. Ruperto,* 739 F.Supp. 873, 881 (S.D.N.Y.1990).

■ In order to impute such notice to the new defendant through his attorney, however, the plaintiff must demonstrate that the attorney knew or should have known that the additional defendant would be added to the existing suit. *See Gleason v. McBride,* 869 F.2d 688, 693 (2d Cir.1989); *Hood,* 739 F.Supp. at 199; *Hodge,* 739 F.Supp. at 881. In Byrd's case, the allegations against the "John Doe" defendant in the first complaint informed Corporation Counsel that the officer on duty during the incident would be a defendant in the suit.[4] As discussed above,

---

**3.** *Soto,* 80 F.3d 34, demonstrates the importance of knowledge and notice in determining whether an amendment adding defendants may relate back to the original complaint. In *Soto,* an inmate sought to add individual prison guards to his § 1983 complaint. The Second Circuit found that such an amendment could relate back to the original complaint because knowledge of liability could be imputed to the guards. *Id.,* at 36. The Second Circuit remanded for the district court to determine which guards had sufficient notice to avoid prejudice in maintaining a defense. *Id.* at 37.

**4.** The Second Circuit has imputed a defendant's knowledge of a claim from even scantier allegations. In *Soto,* 80 F.3d 34, an inmate brought a § 1983 action alleging that several corrections

officers had failed to protect him from an attack by fellow inmates. The inmate named only the prison institution itself as a defendant, although his claims did not allege supervisory liability. He then sought to amend his complaint to add the individual guards. The Second Circuit found that the allegations in the complaint were sufficient to impute knowledge to the individual guards:

> Since government officials are charged with knowing the law, any [prison] corrections officers who were aware of a lawsuit arising out of the attack on Soto "knew or should have known" that they, not [the prison itself] were subject to liability for the constitutional torts he alleged.

*Id.* at 36. Hults' notice was even more explicit than that provided to the *Soto* defendants. The

Hults' identity was information uniquely accessible to Corporation Counsel. Whether or not counsel knew Hults' name within the 120 days after the complaint was filed, counsel was aware that it would have to obtain that information. Counsel certainly knew that Hults would have been named as a defendant well before the limitations period ended, but for plaintiff's inability to obtain this information from Counsel itself. *See Scott*, 944 F.Supp. at 271.

■ Finally, Hults will not be prejudiced in maintaining his defense on the merits. Corporation Counsel obtained bifurcation of the claims against Hults in June of 1994 in order to prepare his defense without distraction from the issue of municipal liability. Corporation Counsel has thus had every opportunity to prepare a vigorous defense. *See Scott*, 944 F.Supp. at 270–71.

### Conclusion

For the reasons set forth above, Hults' motion to amend must be denied as futile. Because the statute of limitations defense is barred by the relation back of the Second Amended Complaint, Hults' amendment fails to set forth a viable defense.

All motions will be returnable on September 3, 1997. If no summary judgment motion is forthcoming, pretrial orders will also be returnable on that date.

It is so ordered.

naming of a John Doe Corrections Officer in the caption specifically linked the officer on duty with liability for the incident described. If Hults was aware of the lawsuit, he must have realized that he was the officer on duty. As set forth above, knowledge of the lawsuit can be imputed to Hults through the fact that he is represented by Corporation Counsel, who was most certainly aware of the lawsuit.