**In re ENRON CORP., et al., Reorganized Debtors.**

**Enron Corp., Plaintiff,**

v.

**J.P. Morgan Securities Inc., et al., Defendants.**

Bankruptcy No. 01–16034 (AJG). Adversary No. 03–92677.

United States Bankruptcy Court, S.D. New York.

Dec. 15, 2006.

Venable LLP, Richard L. Wasserman, Michael Schatzow, Robert L. Wilkins, of Counsel, Baltimore, MD, Special Litigation Counsel for Reorganized Debtors.

Togut, Segal & Segal LLP, Albert Togut, Frank A. Oswald, Scott E. Ratner, of Counsel, New York, NY, for Reorganized Debtors.

Hunton & Williams LLP, Joseph J. Saltarelli, of Counsel, New York, NY, Tyler P. Brown, of Counsel, Richmond, VA, for EarthLink, Inc.

## OPINION GRANTING PLAINTIFF'S MOTION FOR LEAVE TO AMEND ITS COMPLAINT AGAINST EARTHLINK, INC.

ARTHUR J. GONZALEZ, Bankruptcy Judge.

### FACTUAL AND PROCEDURAL HISTORY

#### A. The Debtors

Commencing on December 2, 2001, and from time to time continuing thereafter, Enron Corp. ("Enron") and its affiliates (the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). On July 15, 2004, the Court entered an order confirming the Debtors' Supplemental Modified Fifth Amended Joint Plan of Affiliated Debtors (the "Plan") in these cases. The Plan became effective on November 17, 2004.

## B. Motion for Leave to Amend the Complaint

EarthLink, Inc. ("EarthLink") was a customer of Trusco Capital Management ("Trusco"). Trusco was a broker or investment advisor [1] in the commercial paper transaction ("Transaction") that involved EarthLink.

On November 6, 2003, Enron initiated this adversary proceeding to recover more than one billion dollars that was allegedly prepaid or redeemed to certain financial institutions prior to the maturity of the A2/P2 commercial paper. Enron brought this adversary proceeding pursuant to and under Rule 7001 of the Federal Rules of Bankruptcy Procedure and seeks relief under sections 502(d), 544, 547, 548, and 550 of the Bankruptcy Code and applicable provisions of state law. Trusco was named as a defendant in the original complaint. On the same date, Enron filed a motion seeking the Court's assistance regarding the production of documents that identified transferees and beneficiaries of the prepayments.

On November 18, 2003, the Court issued an order (the "November 18 Order") that directed certain parties, including Trusco, to initially disclose to Enron the names, and if available, the address and telephone number of the transferees and beneficiaries in connection with the commercial paper transactions. The parties were given five days to comply with that order. EarthLink admits that Trusco did not respond to the November 18 Order even though the order clearly mandated a response. According to Trusco, Enron did not pursue them for a response until after the expiration of the statute of limitations and its filing of its motion to dismiss.

On December 1, 2003, Enron amended its original complaint ("First Amended Complaint") to add transferees and/or beneficiaries of the commercial paper transactions disclosed pursuant to the November 18 Order. EarthLink was not named. As to Trusco, the amended complaint stated that "the defendants identified in paragraphs 12 through 133 were the initial transferees of the early redemptions of Enron commercial paper that was prepaid on or after October 21, 2001, . . . or were the entities for whose benefit such prepayments were made, or were immediate or mediate transferees of such prepayments." Amended Complaint, ¶ 11. The complaint named Trusco in paragraph 119.

On or about December 2, 2003, pursuant to section 546(a) of the Bankruptcy Code, the statute of limitations for preference actions expired.

In February 19, 2004, Trusco filed a motion to dismiss whereby it claimed that Enron was seeking to avoid pre-petition settlement payments it made to purchase certain of its outstanding commercial paper by erroneously characterizing these purchases as preferences under section 547(b) of the United States Bankruptcy Code, or as fraudulent transfers under sections 544(b) or 548(a). In that motion, Trusco also mentioned that the commercial paper it purchased from Goldman Sachs was for a customer, and Trusco made the purchase acting in its capacity as an investment adviser for such customer. Specifically, Trusco stated that "in its capacity as investment adviser to another party, [it] purchased Enron commercial paper with a par value of $2,500,000 from Goldman Sachs." Trusco also claimed that the

---

**1.** Trusco is referred to as both a broker (Objection and Memorandum of Law of Earth-Link, Inc. In Opposition to Motion of Enron Corp. for Leave to Amend Its Complaint, at 4) and as an investment advisor (Memorandum of Law In Support of Trusco Capital Management, Inc. to Dismiss the Amended Complaint, at 5).

"beneficial owner of the Enron commercial paper purchased in this transaction was a customer of Trusco" and that Trusco purchased the Enron commercial paper "with assets of its customer." Subsequently, Enron sought from Trusco compliance with the November 18 Order that requested the identity of the customer. As a result, Trusco disclosed to Enron that EarthLink was the customer who was involved in the Transaction.

On March 30, 2004, EarthLink received actual notice of this adversary proceeding.[2] On May 13, 2004, the Court issued an order to grant Enron's Motion for Extension of Time for Service of the Amended Complaint (the "Order for Extension of Time"), which extended the time for service of the First Amended Complaint to and including September 30, 2004. However, EarthLink had received notice of this complaint already pursuant to Enron's March 30, 2004 notice.

Trusco filed an answer on August 1, 2005. Trusco admitted that the funds from the Transaction were disbursed to Trusco for the benefit of a customer but Trusco denied that it was an initial transferee. Among its defenses, Trusco asserted that it was a "mere 'conduit.' "

On October 19, 2005, Enron filed a motion for leave to amend its complaint (the "Motion for Leave to Amend") with accompanying memorandum ("Enron Memo"), requesting to add transferees and beneficiaries of the prepayment of commercial paper, including EarthLink, as new defendants in this adversary proceeding.

On November 29, 2005, EarthLink filed an objection and accompanying memorandum ("EarthLink Memo") to the Motion for Leave to Amend. A hearing was held on December 15, 2005.

## DISCUSSION

### Parties' Contentions

■ Enron seeks to add a new defendant, EarthLink, relating back to its original complaint and its first amended complaint (the "Original Pleadings"), which were filed within the statute of limitations, pursuant to Federal Rule of Civil Procedure 15(c)(3) ("Rule 15(c)(3)"), made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7015. As this Court has noted, "the party asserting the relation back bears the burden of proof." *In re Enron*, 298 B.R. 513, 522 (Bankr.S.D.N.Y.2003).

Enron argues that its failure to include EarthLink was not a strategic decision, and that its exclusion of EarthLink from the Original Pleadings was attributable to a "mistake" for Rule 15(c) purposes, citing *Randall's Island Family Golf Ctr. v. Acushnet Co. (In re Randall's Island)*, No. 02–2278, 2002 WL 31496229 (Bankr. S.D.N.Y. Nov. 8, 2002), and *Byrd v. Abate*, 964 F.Supp. 140 (S.D.N.Y.1997). Specifically citing *Byrd*, Enron argues that it made efforts to request information regarding EarthLink's identity from Trusco but Trusco failed to respond to its request. As such, Enron alleges that it was unable to discover and then name EarthLink in the complaint due to Trusco's concealment. According to Enron, the failure to name

---

**2.** According to Enron, when it learned that it had not sued all parties that had an interest in the proceeds of the sale of the commercial paper, it put those newly identified parties, including EarthLink, on notice that it might seek to add them as defendants in the litigation. EarthLink claims that it received notice of Enron's intention to sue it in April 2004 and on March 30, 2004; Enron asserts that EarthLink received notice on March 30, 2004. It is not important to determine the exact date that EarthLink received notice but the Court will assume that EarthLink received notice on March 30, 2004.

EarthLink due to such concealment was a "mistake" under Rule 15(c)(3).

In response, EarthLink puts forth two arguments. First, EarthLink argues that Enron's failure to include EarthLink was not a "mistake" under Rule 15(c)(3) because the rule does not allow an amendment to a complaint that adds defendants who were not named originally due to a lack of knowledge. EarthLink states that Enron did not mistakenly name Trusco as a defendant instead of EarthLink. Rather, EarthLink argues that Enron wanted to name both entities and failed to do so because of its lack of knowledge. Second, EarthLink asserts that the delay of nineteen months between March 2004 (when it obtained notice that Enron was interested in suing it), and October 18, 2005 (when Enron moved for leave to amend the complaint), shows a lack of diligence and warrants denial of leave to amend under Rule 15.

Enron contends that the reason it did not contact EarthLink earlier was because Trusco failed to respond to the November 18 Order. Thus, Enron concludes that Trusco engaged in concealment that prevented it from discovering the identity of EarthLink. Enron argues that its lack of knowledge of the identity of EarthLink arising out of Trusco's concealment is a "mistake" that satisfies Rule 15(c)(3). Enron responds to the delay argument by claiming that it has been diligent in seeking leave to amend after giving timely notice to EarthLink.

EarthLink contends that concealment as discussed in applicable case law such as *Byrd* contemplates deliberate attempts to conceal the name of a potential defendant until after the limitations period has expired as well as diligent efforts by the plaintiff to pursue the name of the potential defendant. EarthLink alleges that Trusco did not deliberately conceal Earth-Link's identity and that Enron did not act with the requisite diligence to acquire EarthLink's identity.

Because the Second Circuit has not addressed the issue concerning a mistake in identity under Rule 15(c) involving a section 550 recovery action, both parties rely on factually distinct cases to support their arguments. Enron relies on *Byrd* to argue that Trusco's concealment of EarthLink's identity constitutes a "mistake" under Rule 15(c) and allows relation back. Enron relies on the Second Circuit *Barrow* decision to argue that because Enron is seeking to correct a lack of knowledge, not a mistake in identity, Rule 15(c) does not apply. Both parties mention the *Randall's Island* case that, at the time of the December 2005 hearings on this matter, may have been the case closest on point.

To summarize the dispute, there is a transfer of funds at issue here. At the time of filing the Original Pleadings, Enron erroneously believed that only one defendant was involved in the Transaction. Following the expiration of the statute of limitations, Enron discovered that the named defendant asserts that it disbursed the funds from the Transaction in whole or in part to another party, who Enron asserts would be liable as a defendant in an avoidance action. The issue is thus whether Enron's lack of knowledge as to the *existence* of this other party, rather than Enron's lack of knowledge as to the *identify of this other party while knowing of its existence*, can constitute a mistake under Rule 15(c).

### Analysis

#### A. *The Rule 15(c) Issue*

Rule 15(c) provides, in pertinent part, that

An amendment of a pleading relates back to the date of the original pleading when

...

(2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or

(3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Fed.R.Civ.P. 15(c)(2)-(3).

Although "[t]he purpose of Rule 15 'is to provide maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities,'" *see Siegel v. Converters Transp., Inc.,* 714 F.2d 213, 216 (2d Cir.1983) (citing 6 C. Wright & A. Miller, *Federal Practice and Procedure* § 1471, at 359 (1971)), a court must be mindful not to "undermine the purpose of repose for which statutes of limitations were designed." *Mackensworth v. S.S. American Merchant,* 28 F.3d 246, 252 (2d Cir.1994); *see also Ainbinder v. Kelleher,* No. 92 CIV. 7315(SS), 1997 WL 420279, at *11 (S.D.N.Y. July 25, 1997) ("It is not the purpose of Rule 15(c) to allow plaintiffs a second chance at a new group of defendants after their first claim fails and the statute of limitations has run").

■ To establish "mistake" under Rule 15(c)(3), a plaintiff needs to show either a factual mistake (e.g., he or she misnamed a party it wished to sue) or a legal mistake (e.g., he or she misunderstood the legal requirements of his or her cause of action). *See In re Enron Corp.,* 298 B.R. 513, 524 (Bankr.S.D.N.Y.2003); *see also Soto v. Brooklyn Correctional Facility,* 80 F.3d 34, 35–36 (2d Cir.1996).

■ Under Rule 15(c)(3), a plaintiff can amend its original pleadings by adding a new party after the statute of limitations has expired only if each of three requirements is satisfied. *See Barrow v. Wethersfield Police Dep't,* 66 F.3d 466, 468–69 (2d Cir.1995), *modified on other grounds,* 74 F.3d 1366 (2d Cir.1996). First, the claims asserted against the new party must arise "out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." *Enron Corp.,* 298 B.R. at 522 (citing Rule 15(c)). Second, the new party must have "received such notice of the institution of the action" within the period for service of the summons and complaint pursuant to Rule 4(m), so that "the party will not be prejudiced in maintaining a defense on the merits." *Id.* Third, the new party "knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against it." *Id.*

EarthLink does not contest that Enron satisfies the first prong. The claims against EarthLink clearly arise out of the same conduct, transaction, or occurrence set forth in the original complaint. Also, Enron asserts that the notice portion of Rule 15(c) has been satisfied because EarthLink received actual notice of this adversary proceeding on March 30, 2004, which was within the time allowed by the Court's order extending time for service to September 29, 2004. While EarthLink does not dispute that it received notice within the time allowed by the Court's order, it argues that the delay of nineteen

months between when it obtained notice that Enron was interested in suing it and October 18, 2005, when Enron moved for leave to amend the complaint, warrants denial of leave to amend under Rule 15.[3] Thus, the main contested issue is whether a "mistake" under Rule 15(c) has occurred so that Enron's claim against EarthLink can relate back to the original pleadings, filed within the statute of limitations.

*The Barrow, Byrd, and Randall's Island Cases*

In this section, the Court will discuss the parties' contentions under the precedent in the Second Circuit and certain cases that have interpreted that precedent.

EarthLink argues that Enron fails the mistake test under *Barrow* because Enron is attempting to correct a lack of knowledge of the identity of EarthLink through relation back, not to correct a mistake. In *Barrow*, the court concluded that the "mistake" requirement was not satisfied if adding the new defendant was not to correct a mistake, but to correct a lack of knowledge. *Barrow*, 66 F.3d at 470.

The Court disagrees with EarthLink's application of the *Barrow* case. First, the instant case is factually distinguishable from *Barrow*. The *Barrow* court was not confronted with a situation where a plaintiff did not know that the existing defendant might not be properly identified for each aspect of the transaction at issue. Nor was it presented with a situation where a plaintiff did not know of the existence of a possible new defendant prior to the expiration of the statute of limitations. Enron's lack of knowledge as to the *existence* of possible new defendant is different than a lack of knowledge of this other party's *identity* while knowing of its existence.

In *Barrow*, the plaintiff filed a complaint against a police department, alleging that certain unidentified police officers used excessive force in arresting him. The district court ordered the inmate to amend his complaint by adding the individual officers as defendants and to "make every effort" to determine their names. 66 F.3d at 467. However, the plaintiff filed a complaint after the deadline set by the court and identified the officers as "John Doe" defendants. *Id.* After the statute of limitations had run, the plaintiff amended his complaint again to name the officers individually. *Id.* The defendants moved to dismiss based on the expiration of the statute of limitations. *Id.* The Second Circuit stated that the "failure to identify individual defendants when the plaintiff knows that such defendants must be named cannot be characterized as a mistake." 66 F.3d at 470, *as modified*, 74 F.3d at 1367. In contrast, EarthLink concedes that Enron was not aware that there was an additional entity that it must name as a transferee regarding the Transaction at issue at the time of filing the First Amended Complaint. In its February 19, 2004 motion to dismiss, after the statute of limitations expired, Trusco disclosed the involvement of EarthLink in the Transaction. As a result, there is no dispute that Enron did not become aware of the EarthLink's identity until then. Such information was exclusively within the control of Trusco. Thus, at the time of filing the First Amended Complaint, Enron was unaware of EarthLink's potential involvement in the Transaction.

In addition to factual differences from *Barrow*, the Court finds that EarthLink's interpretation of *Barrow* is too narrow.

---

**3.** It is not clear that EarthLink is making a Rule 15(c) argument on this point because it cites two cases that apply Rule 15 generally, but do not consider the elements of Rule 15(c). Regardless, that argument is addressed *infra* under "Delay."

The *Barrow* court determined that correcting a lack of knowledge of the identity of the new defendant could not be characterized as a mistake when a plaintiff knew that such defendant must be named at the time of the original complaint. *Id.* (stating that "Rule 15(c) explicitly allows the relation-back of an amendment due to a 'mistake' concerning the identity of the parties (under certain circumstances), but the failure to identify individual defendants when the plaintiff knows that such defendants [individual officers rather than a department head] must be named cannot be characterized as a mistake"); *see also Thomas v. Arevalo*, No. 95 Civ. 4704, 1998 WL 427623, at *15 (S.D.N.Y. July 28, 1998) (interpreting the *Barrow* plaintiff's failure to identify the right defendants as a "matter of choice"). Additionally, in its amended opinion, the *Barrow* court emphasized that the mistake requirement is fulfilled "when a defendant mistakenly sues an agency of the government without knowing that the cause of action requires the defendant to sue an agency head." *Barrow*, 74 F.3d at 1367. The *Barrow* court then found that the failure to name the new defendants due to lack of knowledge is not a mistake for the purposes of Rule 15(c) because the plaintiff did not "mistakenly believe that suing the police department, rather than a department head, would suffice." *Id.* Instead, the *Barrow* court found that the plaintiff was informed by the trial court that he needed to name the specific new defendants within the limitations period. *Id.*

## The Byrd Analysis

As both parties point out, one court has distinguished *Barrow's* interpretation of Rule 15(c) and permitted relation back under certain circumstances within which a plaintiff knew that there was another defendant to be named but did not so timely. *See Byrd v. Abate*, 964 F.Supp. 140 (S.D.N.Y.1997).

■ The Court agrees with EarthLink that the *Byrd* case does not support relation back. The *Byrd* court, which allowed relation back to a defendant not named before the statute of limitations expired, emphasized the defense counsel's conduct that constituted concealment. *Id.* at 145–46. That court emphasized that the defense counsel *repeatedly* refused to cooperate in providing information. On the other hand, that court also focused on the persistent efforts of the plaintiff's counsel to obtain the concealed information.[4] *Id.* Here, the Court acknowledges Enron's argument that Trusco did not disclose EarthLink's identity pursuant to the November 18 Order and that such act could support concealment finding under *Byrd*. However, the Court does not find that Trusco *repeatedly* refused to cooperate in providing information under *Byrd* because there is only one instance of Trusco not providing information regarding EarthLink. Nor does the Court find that Enron made persistent efforts to obtain the concealed information. Except for the November 18 Order, Enron did not seek any discovery

---

**4.** In *Byrd*, the plaintiff brought suit against numerous defendants after being assaulted in prison. *Id.* at 142–143. The original complaint named "John Doe," a corrections officer, as a defendant. *Id.* at 143. The plaintiff's counsel first requested disclosure of the name of the "John Doe" officer nine months before the limitations period expired. *Id.* at 144. After the Corporation Counsel rejected the first request, plaintiff's counsel requested log books to discover who was on duty. *Id.* at 143. The counsel's second request was rejected until "either Byrd agreed to bifurcate the trial or bifurcation was determined by motion to the Court." *Id.* "Despite the resolution of the bifurcation issue, Corporation Counsel did not reveal the name of the individual officer, nor turn over log books" until after the statute of limitations expired. *Id.*

from Trusco within the limitations period. The Court will not determine whether Trusco violated the November 18 Order by not providing that information to Enron because Enron does not raise that issue independent of its *Byrd* concealment argument. And as stated above, the failure to respond to the November 18 Order was not sufficient under the circumstances to establish concealment.

### The Randall's Island Case

The Court also disagrees with Earth-Link's argument that the *Randall's Island* case is distinguishable from the instant matter. In that case, the debtors filed suit against an insurance agent, Mang, to recover an alleged preference payment made within ninety days prior to the petition date. *In re Randall's Island*, 2002 WL 31496229, at *1. In its answer to the complaint, the defendant insurance agent asserted that it was a mere conduit because the alleged preference payment was an insurance premium due to another entity—an insurer, Crum. *Id.* The debtors then sought, after the two-year limitations period had expired, to amend their complaint to add the insurer. *Id.*

The *Randall's Island* court concluded that the debtors met the "mistake" test required by Rule 15(c)(3) after finding that the debtors misidentified the new defendant—a transferee of the alleged transactions. *Id.* at *3–5. There was no evidence to support that the debtors knew that such transferee was involved in the alleged transactions, but nonetheless decided to sue a "conduit" at the time of original complaint. *Id.*

EarthLink attempts to distinguish *Randall's Island* by stating that "because Enron did not fail to identify EarthLink based on misidentification, *Randall's Island* does not support the conclusion that Enron meets the mistake requirement of

Rule 15(c)" and "[h]ere, however, Enron failed to identify *any* customer of Trusco." Enron Memo, at 8 (emphasis in original). This Court disagrees with EarthLink's interpretation of Enron's position and its interpretation of *Randall's Island.* First, Enron may have failed to identify Earth-Link based on misidentification. Second, it is not clear that naming any customer of Trusco's would have made this case more similar to *Randall's Island.*

Furthermore, the structure of the defendants in *Randall's Island* and in the instant matter is closely similar. In *Randall's Island,* Mang, the original defendant, was an insurance broker who claimed to be a mere conduit for a customer, an insurance supplier—the potential new defendant. Here, Trusco is an investment advisor and/or broker who claims to be a mere conduit for a customer—the potential new defendant.

The Court has not found another case in the Second Circuit that has addressed the issue concerning a mistake in identity under Rule 15(c) involving a section 550 recovery action. A case involving the assertion of a "conduit" defense from the United States Bankruptcy Court for the District of Columbia is instructive and persuasive on this matter. *See Alberts v. Arthur J. Gallagher & Co. (In re Greater Southeast Cmty. Hosp. Corp. I)*, 341 B.R. 91 (Bankr.D.D.C.2006), *modified,* 2006 WL 2083500 (Bankr.D.D.C. June 26, 2006).

### Trusco's "Mere Conduit" Defense and the Alberts Analysis

On facts similar to the instant matter, the *Alberts* court stated that Rule 15(c) should not be strictly construed where a trustee or debtor is seeking a section 550 recovery and a question exists as to the identity of the initial transferee. The resolution of that question requires the bankruptcy court's factual and legal determina-

tion. *See Alberts*, 341 B.R. at 99–100. According to the *Alberts* court, depending on the bankruptcy court's determination, a mistake in identity could be found if the plaintiff mistakenly identified an existing defendant as a sole initial transferee of the alleged transactions in the original complaint. *Id.*

(a) *Rule 15(c) and Whether the Original Defendant Was an Initial Transferee*

*Alberts* involved a bankruptcy proceeding in which the trustee-plaintiff, Sam Alberts, initially filed a complaint pursuant to sections 544, 547, 548, 549, and 550 of the Bankruptcy Code to avoid and recover various payments the debtors made to Arthur J. Gallagher Co. ("AJG"). *Id.* at 94–95. Initially, Alberts believed that AJG was the sole initial transferee of each transaction. *Id.* AJG filed an answer raising a conduit defense, stating that it was not the initial transferee. *Id.* at 95. Alberts subsequently filed an amended complaint adding three insurance companies as "Additional Defendants." *Id.* at 95. The complaint did not substitute the additional defendants in place of AJG; rather, the plaintiff pointed to his right to recover from the additional defendants as initial transferees to the extent that they, and not AJG, were initial transferees. *Id.* These additional defendants sought dismissal based on the statute of limitations that would have otherwise barred the amended complaint unless the court found it related back to the original complaint under Rule 15(c). *Id.* at 94.

In the instant matter, like the original defendant in *Alberts*, Trusco claimed a

conduit defense in its answer. Trusco also claimed in its motion to dismiss of February 19, 2004 that it was acting on behalf of a customer regarding the Transaction and that the customer was the beneficial owner of the Enron commercial paper. If Earth-Link was the initial transferee instead of Trusco, and Enron lacked knowledge concerning EarthLink's role within the limitations period, Enron made a Rule 15(c) mistake in failing to name EarthLink in the original pleadings. However, that determination is unresolved and will require further evidentiary development. The burden of proving the conduit defense will likely be Trusco's. *See Alberts*, 341 B.R. at 99.

The *Alberts* court concluded that whether Alberts made a mistake under Rule 15(c) for relation-back purposes depended on the court's resolution of the legal question as to the identity of the initial transferee. *Id.* at 99 ("Only after the court determines which party was the initial transferee with respect to any given portion of the alleged transfer will Alberts be in a position to determine which party or parties are, in fact, the proper defendants in this action"). Since each of the parties could be an initial transferee for only a portion of the funds,[5] determining the relation-back issue requires consideration of matters outside the pleadings, such as the extent of the plaintiffs' knowledge regarding the new defendants before the limitation period expired, and would be more appropriately decided on a summary judgment motion or through findings of fact and law following an evidentiary hearing. 2006 WL 2083500, at *2. If after discovery,

---

**5.** The *Alberts* court further explained how conduit defenses split liability

> Mere conduit defenses such as that raised by AJG typically alter liability based on the happenstance of the legal obligation governing the initial recipient's subsequent transfer of the subject funds to third parties,

of which the bankruptcy trustee commonly has no direct knowledge. It is on that basis alone that § 550 liability, in instances such as this, then becomes splintered among several parties notwithstanding that the subject transfer was made to only one individual. *Alberts*, 341 B.R. at 99.

the court later determined that AJG was a mere conduit, not an initial transferee of the entire alleged preferential payment, Alberts made a mistake in naming AJG as the sole initial transferee. 341 B.R. at 99–100. If the court later determined that AJG was a conduit of a divisible portion of the preferential payment, then Alberts made a mistake to the extent that AJG was not an initial transferee. *Id.* at 100. Under both situations, Alberts could name the new defendants to the extent that AJG was a conduit. *Id.* To the extent that the court found that AJG was the initial transferee of the payment, "Rule 15(c)(3) may not be employed by Alberts to pursue the [three new defendants] under 11 U.S.C. § 550(a)(2) as subsequent ('immediate or mediate') transferees from AJG of same dollars for which AJG was the initial transferee. As to such transfers, Alberts did not make a mistake in suing AJG as liable." *Id.*

As discussed previously, there has not been an adjudication as to what extent Trusco and EarthLink may be an initial transferee and/or beneficiary under section 550. Thus, both in *Alberts* and the instant matter, the respective bankruptcy court will have to determine the extent to which the original defendant was properly named as transferee and/or beneficiary. Such determination will form the basis of the resolution of the issue as to whether a Rule 15(c) mistake can be established.

(b) *Lack of Knowledge*

The *Alberts* court is additionally instructive in its explanation of the distinction between a plaintiff who knows the involvement of the new defendant prior to the running of the statute of limitations and one that does not know of the defendant's "possible existence during that limitations period." *Alberts*, 341 B.R. at 101 (citing *Arthur v. Maersk, Inc.*, 434 F.3d 196, 209 (3d Cir.2006)). Specifically, because Al-

berts sought to file suit against all initial transferees in his original complaint and "to the extent that AJG was a mere conduit [and] the [three insurance companies] were the initial transferees and hence the only appropriate defendants to sue," Alberts' lack of knowledge as to the existence of the three insurance companies in filing the complaint would be considered a mistake under Rule 15(c). *Alberts*, 341 B.R. at 101 (stating that "Alberts' lack of knowledge led to his mistake in not suing them, thus making Rule 15(c)(3)(B) applicable."). Further, the *Alberts* court explained as follows

Here, Alberts did not simply fail to identify a theory of liability upon which a party known to him could also be named as a defendant. Rather, only upon revelations made by AJG in its answer to the complaint did Alberts become aware that *a conduit relationship might exist between AJG and the Added Defendants that would make those Added Defendants the actual "initial transferees" of the dollars transferred within the meaning of § 550(a)(1).*

*Id.* at 104 (emphasis added). In its reconsideration opinion, the *Alberts* court clarified that Alberts' lack of knowledge referred to the existence of the added defendants within the statute of limitations and to the *possible* conduit relationship between an original defendant and the added defendants. *Alberts*, 2006 WL 2083500, at *2. That court further explained that "the lack of knowledge the court deems relevant" is plaintiff's knowledge of a *possible* relationship or connection between added defendants and original defendants, or, between the debtors and added defendants "sufficient to put plaintiff on notice" that the added defendants "might in some way be connected to the transfers" of the alleged transactions. *Id.* at *2 n. 1. Here, no evidence is present

that Enron received adequate notice that there might be a *possible* relationship or connection between Trusco and EarthLink regarding the transfers at issue. There seems to be no dispute that Enron did not know of EarthLink's involvement until after the statute of limitations expired, when Trusco claimed in its motion to dismiss that it purchased the commercial paper for a customer.

The *Alberts* court's analysis is consistent with *Randall's Island*, in that both supported relation back against an added defendant where the named defendant raised a conduit defense and where the added defendant's involvement in the alleged transactions was entirely unknown to the plaintiffs within the statute of limitations.

Finally, there has been recent support out of the Southern District of New York for less-stringent application of Rule 15(c) in adversary proceedings. *See Global Crossing Estate Representative v. Winnick,* No. 04 Civ. 2558(GEL), 2006 WL 2212776, at *7 (S.D.N.Y. Aug. 3, 2006). In *Global Crossing,* an estate representative of a bankrupt company brought fraudulent transfer claims against Canadian Imperial Bank of Commerce ("CIBC") within the statute of limitations, but named CIBC's subsidiaries after Section 546(b)'s two-year limitations period ended. The court allowed relation back under Rule 15(c), in part because "in this welter of related entities, at the time of the initial complaint plaintiff had difficulty in determining which among them could properly be charged with liability." *Id.* While it is true that the entities in that case—CIBC and its subsidiaries—had a closer identity of interest than EarthLink and Trusco, that seems to have been considered under the "notice" factor of Rule 15(c), which is not at issue here. *Id.* ("Given the close identity of interest between CIBC and its subsidiaries, the subsidiaries had every reason

to know that, but for [the] ... confusion or mistake concerning the identity of the proper parties, they would have been defendants from the beginning.")

*The Need for Additional Factual Development*

■ The Court agrees with the *Alberts* decision that the issue of the relation back would be more appropriately decided on a summary judgment motion or through findings of fact and law following an evidentiary hearing because matters still have to be clarified and determined, principally the identity of the initial transferee. *See Alberts,* 2006 WL 2083500, at *2; *see also Global Crossing,* 2006 WL 2212776, at *7 n. 8 ("To the extent the Estate Representative seeks to hold CIBC liable for transfers made to the other CIBC defendants (a matter that is not entirely clear from the complaint), that raises factual issues that cannot be resolved at the pleadings stage") (citing § 550(a)(1)).

■ A court can allow the amended complaint without concurrently ruling on the relation back issue. *See, e.g., Lopez v. Ward,* 681 F.Supp. 192, 195 (S.D.N.Y. 1988). The Court will thus allow the amended complaint, to the extent it names EarthLink as a defendant, but the relation back issue must be decided after further evidentiary hearings to determine the initial transferee or upon a summary judgment motion.

In two instances, it appears that relation back would be appropriate against EarthLink. One, if Trusco was strictly a conduit, and EarthLink was the initial transferee, it would appear that Enron made a "mistake" for Rule 15(c) purposes in naming Trusco and not naming EarthLink. Two, to the extent that Trusco retained a benefit while forwarding the balance of the payment to EarthLink, it would appear that Enron made a "mistake" for Rule 15(c) purposes in not naming EarthLink.

If Trusco were found to be the sole initial transferee, then there would be no mistake in naming only Trusco. As mentioned above, the burden of proof is likely on Trusco to establish its conduit defense.

The determination of initial transferee liability must encompass liability not just among parties but also among amounts. The claims asserted are legally divisible to the extent that Trusco and EarthLink could be found to be initial transferees as to different portions of the Transaction. As stated in *Alberts*, "[t]hat Alberts has decided to pursue the recovery of the transfers in a single action does not alter the fact that his right to avoid such transfers run to each dollar individually." 341 B.R. at 100.[6] To the extent that Trusco retained a commission or advisory fees before forwarding the balance of the funds to EarthLink, Trusco could be liable as an initial transferee for that commission or fee, but EarthLink would not be, although EarthLink could be liable as the initial transferee for the balance. *Id.* at 95. Then again, Trusco may be able to assert that it was not an initial transferee as to the amount of any commission. *See, e.g., In re Black & Geddes, Inc.,* 59 B.R. 873, 874 n. 2 (Bkrtcy.S.D.N.Y.1986).

▓ Although not central to this decision, the Court will also comment on two specific arguments by EarthLink that it found unpersuasive. One, EarthLink suggested that Enron could have preserved a claim against it by naming a defendant as "John Doe." The Second Circuit, however, does not allow the relation back of "John Doe" defendants, as that has been determined to indicate a lack of knowledge, rather than a mistake. *See Barrow,* 66 F.3d at 469–70; *see also Dupree v. Pough,* 454 F.Supp.2d 166, 174–75 (S.D.N.Y.2006) (holding that naming defendants as "John and/or Jane Does" does not pass Rule 15(c) muster under *Barrow* because that indicates a lack of knowledge rather than a mistake); *Sloane v. Town of Greenburgh,* No. 01 Civ. 11551(MBM), 2005 WL 1837441, at *4 (S.D.N.Y. July 27, 2005) (holding that an "amendment of a complaint replacing 'John Doe' defendants with real persons must be made before the expiration of the limitations period" according to *Barrow*).[7]

▓ Second, EarthLink's counsel suggests that a *Byrd*-type finding would be inappropriate because it did not represent Trusco or EarthLink until January 2004, after the non-compliance with the November 18 Order, and thus was not the counsel who concealed information. That argument should obviously fail. A party cannot insulate its concealment of information simply by a roster change of its legal counsel.

### B. *Delay*

▓ EarthLink argues that the Enron's undue delay in filing its motion to amend is another reason why Enron should be denied the motion to amend. The delay to which EarthLink refers is the time between March 30, 2004 (the date that Enron put EarthLink, on notice that it might seek to add them as defendants in the litigation), and October 19, 2005 (the date of Enron's motion to amend). For the reasons stated below, the Court does not

---

**6.** Because liability can become splintered here, as the conduit defense is partial, this Court urges EarthLink's counsel, who currently represents both Trusco and EarthLink, to examine any potential conflicts of interest and act accordingly.

**7.** For a detailed critique of the practice by courts of not allowing "John Doe" defendants, see *Singletary v. Pennsylvania Dept. of Corrections,* 266 F.3d 186, 201–02 n. 5 (3d Cir.2001).

find that the delay here warrants a denial of the motion to amend.

 It is within the sound discretion of this Court whether to grant leave to amend. *See Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). As the Second Circuit has stated, "[m]ere delay, however, absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." *Block v. First Blood Assoc.,* 988 F.2d 344, 350 (2d Cir.1993). "In determining what constitutes 'prejudice,' we consider whether the assertion of the new claim would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Id.* Where the defendants argued that "they were prejudiced solely because of the time, effort and money they expended in litigating this matter," the Second Circuit did not find "substantial prejudice." *Id.* On the other hand, when leave to amend has been sought "long after the close of discovery" and after a summary judgment ruling, the court found that leave to amend was properly denied. *See Jin v. Metropolitan Life Ins. Co.,* 310 F.3d 84, 101–02 (2d Cir.2002).

Here, EarthLink has pointed to no specific prejudicial effects it would suffer if the Court granted Enron leave to amend. EarthLink merely states that "litigation has proceeded past rulings on the dismissal motions, answers have been filed, interlocutory appeals are being pursued, discovery is proceeding, and the case has otherwise been progressing for the two years it has been pending." This does not demonstrate the requisite prejudice. Delay alone here would not warrant a denial of leave to amend.

EarthLink claims that Enron's lack of diligence is enough to deny leave to amend. The Court disagrees. While Enron's lack of diligence may hurt it under a *Byrd* analysis, under the more general Rule 15 standards applicable here, its lack of diligence is much less crucial than prejudice shown by EarthLink. The one case EarthLink relies on does not convince this Court of otherwise. In *Reborn Enterprises, Inc. v. Fine Child, Inc.,* 590 F.Supp. 1423 (S.D.N.Y.1984), the plaintiff moved, nearly on the eve of trial and after "exhaustive discovery," to add two new claims against the defendants. The court denied leave to amend, citing the plaintiff's lack of diligence as one reason. *Id.* at 1449. The plaintiff had throughout the entire litigation been in possession of the "facts necessary to make the two new allegations." *Id.* Here, in contrast, Enron only came into possession of the necessary facts in March 2004 and promptly notified EarthLink of its potential status as a defendant. Enron also informed the numerous defendants in May 2004 that it would not seek to amend its complaint immediately but would do so after all the defendants had been served and made the required disclosures covered by the November 18 Order. The Court finds that Enron has been diligent in seeking leave to amend the complaint after putting EarthLink on notice that it might seek to add them as a defendant.

## CONCLUSION

The Court rejects Earthlink's prejudicial delay argument and finds that Enron has been diligent in seeking leave to amend the complaint after giving EarthLink notice that Enron might seek to add it as a defendant.

The Court will allow Enron to amend the complaint. As to Rule 15(c)(3)(B), the failure to name EarthLink within the limi-

tations period is found to be a mistake under Rule 15(c) to the extent that Earth-Link is determined to be an initial transferee and/or beneficiary of the prepayment. In addition, *Barrow's* holding would not preclude the Court from permitting relation back if a correction of a mistake in identity of EarthLink, not a correction of lack of knowledge, were made by Enron. If such correction of mistake were found, because the Court has determined that there was no dispute that Enron lacked knowledge concerning EarthLink at the time of filing the original pleadings, case law, such as *Randall's Island* and *Alberts*, would support the relation-back relief sought by Enron.

Pending a further determination as to whether the amended complaint relates back to the original pleadings, precluding EarthLink at this juncture from being a defendant who may be ultimately found to be an initial transferee is premature when it is not disputed that Enron had no knowledge concerning EarthLink's role in the Transaction within the statute of limitations. The Court is also mindful of the consequences of not allowing EarthLink to be conditionally named as a defendant. One of the consequences would be that EarthLink could not actively participate as a party in discovery and motion practice as to matters that could ultimately affect its liability. Also, Enron would not have the same rights to obtain information from an entity that is only a third party, and not a defendant. Hence, for the purposes of facilitating Enron's discovery efforts and completing the further determination that will decide the roles of Trusco and Earth-Link in the Transaction, the Court grants Enron's motion to file an amended complaint adding EarthLink as a defendant to the extent that EarthLink is determined to be a transferee and/or beneficiary. This ruling is not a final determination as to

whether the amended complaint relates back to the original pleadings.

The Debtor is to settle an order consistent with this opinion.