In re ENRON CORP., et al., Reorganized Debtors.

Enron Corp., Plaintiff,

v.

J.P. Morgan Securities Inc., et al., Defendants.

Bankruptcy No. 01–16034 (AJG). Adversary No. 03–92677.

United States Bankruptcy Court, S.D. New York.

Dec. 15, 2006.

Venable L.L.P. (Richard L. Wasserman, Esq., Michael Schatzow, Esq., Robert L. Wilkins, Esq., of Counsel), Baltimore, MD, Special Litigation Counsel for the Reorganized Debtors.

Togut, Segal & Segal LLP (Albert Togut, Esq., Frank A. Oswald, Esq., Scott E. Ratner, Esq., of Counsel), New York, NY, Attorneys for the Reorganized Debtors.

Sidley Austin Brown & Wood LLP (William M. Goldman Esq., John G. Hutchinson Esq., Martin B. Jackson Esq., of Counsel), New York, NY, Attorneys for Merrill Lynch Investment Managers L.P. and Merrill Lynch Investment Managers Co., Ltd.

OPINION REGARDING PLAINTIFF'S MOTION FOR LEAVE TO AMEND ITS COMPLAINT AGAINST MERRILL LYNCH INVESTMENT MANAGERS CO., LTD.

ARTHUR J. GONZALEZ, Bankruptcy Judge.

## FACTUAL AND PROCEDURAL HISTORY

*The Debtors*

Commencing on December 2, 2001, and from time to time continuing thereafter,

Enron Corp. ("Enron") and its affiliates (the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). On July 15, 2004, the Court entered an Order confirming the Debtors' Supplemental Modified Fifth Amended Joint Plan of Affiliated Debtors (the "Plan") in these cases. The Plan became effective on November 17, 2004.

### Motion for Leave to Amend the Complaint

On November 6, 2003, Enron initiated this adversary proceeding to recover more than one billion dollars that was allegedly prepaid or redeemed to certain financial institutions, including Merrill Lynch Investment Managers L.P. ("MLIM"), prior to the maturity of A2/P2 commercial paper. In the original complaint, Enron filed suit against all defendants pursuant to Sections 502(d), 544(b), 547(b), 548(a), and 550 of the Bankruptcy Code. Specifically, regarding section 550 of the Bankruptcy Code, Enron alleged that the defendants, including MLIM, were (1) initial transferees of the early redemptions of Enron commercial paper, (2) entities for whose benefit such prepayment was made, or (3) immediate or mediate transferees of such prepayment. Merrill Lynch Investment Managers Co., Ltd. ("MLIM Japan") is a separate entity from MLIM that is licensed in Japan as a Japanese investment trust manager and a Japanese investment advisory service firm. MLIM Japan was not named as a defendant in the original complaint. On November 6, 2003, Enron filed a motion seeking the Court's assistance in the production of documents that identified transferees and beneficiaries of such prepayments.

On November 18, 2003, the Court issued an order (the "November 18 Order"), which directed certain parties, including MLIM, to disclose initially to Enron the names, and if available, the addresses and telephone numbers of the transferees and/or beneficiaries in connection with the commercial paper transactions. By the November 18 Order, MLIM was directed to make limited Fed.R.Civ.P. 26(a)(1)(A) initial disclosures on an expedited basis of the information regarding the entity with CUSIP Number 29356AYS9 for the amount of $24,958,333.33 ("Transaction 1") and 29356AZE9 for the amount of $49,851,166.67 ("Transaction 2", collectively with Transaction 1, the "Transactions"). According to Enron, MLIM disclosed the names of certain parties pursuant to the November 18 Order. MLIM Japan was not one of the parties disclosed by MLIM. According to MLIM, MLIM Japan was not disclosed because it was not a transferee and/or beneficiary of the Transactions.

On December 1, 2003, Enron amended its original complaint to add transferees and/or beneficiaries of the commercial paper transactions disclosed pursuant to the November 18 Order (the "First Amended Complaint"). MLIM was named as a defendant in the First Amended Complaint. MLIM Japan was not named as a defendant in the First Amended Complaint.

On or about December 2, 2003, pursuant to section 546(a) of the Bankruptcy Code, the statute of limitations for preference actions expired.

On February 19, 2004, MLIM joined certain defendants in a motion to dismiss the First Amended Complaint pursuant to section 546(e) and 548(d)(2)(B) of the Bankruptcy Code. On March 25, 2004, MLIM filed a motion for summary judgment (the "Motion for Summary Judgment") regarding the repurchase transactions for which Enron alleged MLIM to be a transferee and/or beneficiary as set forth in the First Amended Complaint. MLIM argued that it could not be liable for the Transactions because MLIM was neither a

transferee nor a beneficiary under a section 550 recovery action. In making this defense, MLIM asserts that it never was a record or beneficial owner of, or otherwise held legal title to, and never exercised control over the proceeds of the Transactions. Instead, MLIM revealed that MLIM Japan was involved in the Transactions.

Further, in the Motion for Summary Judgment, MLIM asserted, among other things, that MLIM Japan's involvement was that of an advisor for its client with regard to the Transactions and was not a transferee and/or beneficiary. Specifically, MLIM asserted that MLIM Japan had no ability to use the proceeds of the Transactions for the benefit of MLIM Japan or MLIM and MLIM Japan did not possess any legal or beneficial interest in those proceeds. However, MLIM conceded that MLIM Japan could direct the use of those proceeds in accordance with its investment management obligations to its clients under a trust agreement. On August 29, 2005, the Court issued an opinion (the "August 29 Opinion") finding that summary judgment determination would be premature prior to affording Enron an opportunity to conduct discovery for various facts that are within the control of MLIM.

On May 13, 2004, at Enron's request, the Court issued an order directing certain defendants in this adversary proceeding to comply with the November 18 Order (the "May 13 Order"). However, MLIM was not one of the defendants within Enron's request and therefore not included in the May 13 Order. On the same date, the

Court granted Enron's Motion for Extension of Time for Service of the Amended Complaint (the "Motion for Extension of Time"), which extended the time for service of the First Amended Complaint to and including September 30, 2004.

MLIM Japan received actual notice of this adversary proceeding on September 29, 2004. On October 19, 2005, Enron filed a motion for leave to amend its complaint (the "Motion for Leave to Amend"), requesting, among other things, to add additional parties whom Enron alleged were transferees and/or beneficiaries of the prepayment of Enron commercial paper, including MLIM Japan, as new defendants in this adversary proceeding pursuant to Federal Rule of Civil Procedure 15(c)(3) ("Rule 15(c)(3)").

On December 1, 2005, MLIM and MLIM Japan jointly filed an objection to the Motion for Leave to Amend. A hearing was held on December 15, 2005 (the "December 15 Hearing").

### DISCUSSION

*Parties' Contentions*

Enron seeks to add a new defendant, MLIM Japan, relating back to its original complaint and the First Amended Complaint pursuant to Rule 15(c)(3).[1] Citing *Randall's Island Family Golf Ctr. v. Acushnet Co. (In re Randall's Island)*, 2002 WL 31496229 (Bankr.S.D.N.Y.2002), Enron argues that its failure to include MLIM Japan was not a strategic decision, and that its exclusion of MLIM Japan from the First Amended Complaint was

---

1. In its Motion for Leave to Amend, Enron seeks to add new defendants, including MLIM Japan, relating back to the First Amended Complaint. However, at the hearing, Enron referenced relation-back to the original complaint. The different references are of no consequence because MLIM was named as a

defendant based upon causes of action under sections 502, 544, 547, 548, and 550 of the Bankruptcy Code both in the original complaint and the First Amended Complaint. Further, each complaint was filed prior to the expiration of the statute of limitations.

attributable to its lack of knowledge of MLIM Japan's identity. Moreover, citing *Byrd v. Abate*, 964 F.Supp. 140 (S.D.N.Y. 1997), Enron argues that it made efforts to request information, pursuant to the November 18 Order, regarding MLIM Japan's identity from MLIM. However, because MLIM Japan was not included in MLIM's response to the November 18 Order, the failure to name MLIM Japan in the First Amended Complaint was a "mistake" under Rule 15(c)(3).

In response, MLIM and MLIM Japan argue that Enron does not satisfy the requirements of Rule 15(c)(3) for its failure to include MLIM Japan in the First Amended Complaint. Citing *Barrow v. Wethersfield Police Dep't*, 66 F.3d 466 (2d Cir.1995), *modified*, 74 F.3d 1366 (1996),[2] they further argue that Enron's failure to include MLIM Japan was not a "mistake" under Rule 15(c)(3) because the rule does not allow an amendment to a complaint adding parties where the newly-added defendants were not named originally due to a lack of knowledge or because the plaintiff did not know their identities. Moreover, they assert that Enron cannot claim it mistook MLIM for MLIM Japan because Enron is not requesting to replace MLIM with MLIM Japan.

Additionally, MLIM and MLIM Japan argue that the *Byrd* case is not applicable because (1) MLIM never concealed the identity of MLIM Japan and, in fact, disclosed the related information to Enron, (2) Enron never sought any discovery from MLIM within the limitations period, and (3) Enron failed to use Rule 2004 to discover MLIM Japan's identity, even if MLIM Japan were a transferee or beneficiary of

the Transactions. Further, they argue that *Randall's Island* is distinguishable from the facts in the instant matter. *Randall's Island* discussed a situation where a plaintiff made a mistake by naming "mere conduits" as defendants originally and, later sought a relation-back of a transferee. By contrast, here, they assert that MLIM Japan acting as an investment adviser was not a transferee and/or beneficiary of the Transactions and there is no allegation that MLIM acted as an agent for MLIM Japan in the Transactions.

Lastly, MLIM and MLIM Japan argue that the period of time between the point at which Enron had knowledge of MLIM Japan's existence and Enron's filing of its Motion for Leave to Amended against MLIM Japan was unreasonably lengthy. As a result, MLIM Japan argues that Enron's motion should be denied because of undue delay.

In response to their argument that MLIM did not conceal the identity of MLIM Japan, Enron asserts that MLIM was served with the November 18 Order, but it did not disclose MLIM Japan's identity and involvement pursuant to the November 18 Order. Instead, MLIM identified other non-affiliated transferees and beneficiaries of certain commercial paper transactions.

At the December 15 Hearing, MLIM and MLIM Japan countered that it is justifiable for MLIM not to reveal MLIM Japan because MLIM Japan, merely as an investment adviser, does not fit in the categories of "transferees" or "beneficiaries" pursuant to the November 18 Order.

---

**2.** To support its argument, MLIM Japan also cited other cases, such as *Tapia–Ortiz v. Doe*, 171 F.3d 150, (2d Cir.1999), *West v. City of New York*, NO. 88–1801, 1995 U.S. Dist. LEXIS 2057 (S.D.N.Y 1995), *Malesko v. Corr.* *Servs. Corp.*, 229 F.3d 374 (2d Cir.2000), and *Daniels v. Loizzo*, 174 F.R.D. 295 (S.D.N.Y. 1997). All these cases either cite to the *Barrow* case or state the same proposition as in the *Barrow* case.

### Analysis

Rule 15(c) provides, in pertinent part, that

An amendment of a pleading relates back to the date of the original pleading when

. . .

(2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or

(3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Fed.R.Civ.P. 15(c)(2)-(3).

■ Generally, the intent of Rule 15(c) is "to protect a plaintiff who mistakenly names a party and then discovers, after the relevant statute of limitations has run, the identity of the proper party. Rule 15(c) was never intended to assist a plaintiff who ignores or fails to respond in a reasonable fashion to notice of a potential party." *Kilkenny v. Arco Marine, Inc.,* 800 F.2d 853, 857–58 (9th Cir.1986) (citing *Unicure, Inc. v. Thurman,* 97 F.R.D. 1, 6 (W.D.N.Y.1982)).

■ The Court has held previously that the party who asserts relation-back bears the burden of proof. *In re Enron Corp.,* 298 B.R. 513, 522 (Bankr.S.D.N.Y. 2003) (citation omitted). Under Rule 15(c)(3), a plaintiff can amend its pleadings by adding a new party after the statute of limitations has expired only if each of three requirements is satisfied. *Barrow,* 66 F.3d at 468 (stating "[s]uch an amendment may only be accomplished when all of the specifications of Fed.R.Civ.P. 15(c) are met." (citation omitted)). First, the claims asserted against the new party "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." *Enron Corp.,* 298 B.R. at 522. Second, the new party "has received such notice of the institution of the action" within the period of service of the summons and complaint pursuant to Rule 4(m), so that "the party will not be prejudiced in maintaining a defense on the merits." *Id.* Third, the new party "knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against it." *Id.*

In the instant matter, none of the parties dispute the satisfaction of the first requirement under Rule 15(c). The contested issues presented are (1) whether a mistake under Rule 15(c) has occurred so that a plaintiff's claim against a new defendant can relate back, and, if so, (2) whether adding a new defendant after the statute of limitations expired would have a prejudicial effect on the new defendant in maintaining its defense.

### I. Mistake

■ The Second Circuit has found that the "mistake" requirement "presupposes that in fact the reason for [a new defendant] not being named was a mistake in identity." *Cornwell v. Robinson,* 23 F.3d 694, 705 (2d Cir.1994); *see also Richardson v. John F. Kennedy Mem'l Hosp.,* 838 F.Supp. 979, 987 (E.D.Pa.1993) (stating that "the type of mistake with which Rule 15(c) is concerned" is a mistake "in identifying the party whom he wanted to sue.").

The *Barrow* court stated that Rule 15(c) "is meant to allow an amendment changing the name of a party to relate back to the original complaint only if the change is the result of an error, such as misnomer or misidentification." *Barrow*, 74 F.3d at 1366.

■ To establish a "mistake" under Rule 15(c)(3), a plaintiff must show either a factual mistake (for example, he or she misnamed a party or misidentified the party [it] wished to sue) or a legal mistake (for example, he or she misunderstood the legal requirements of his or her cause of action). *Enron*, 298 B.R. at 524.

A. The *Byrd, Barrow, Randall's Island* Cases

■ In this section, the Court will discuss the parties' contentions under precedent in the Second Circuit and certain cases that have interpreted that precedent.

*The Byrd Analysis*

The Court agrees with MLIM and MLIM Japan that the *Byrd* case does not support to grant relation-back relief sought by Enron. The *Byrd* court emphasized and examined defense counsel's conduct constituting active concealment. *See Byrd*, 964 F.Supp. at 145–46. It required a showing that defense counsel refused *repeatedly* to cooperate in providing information. On the other hand, that court focused on the persistent efforts of plaintiff's counsel to obtain the concealed information.[3] *Id.* Here, the Court recognizes

Enron's argument that MLIM did not disclose MLIM Japan's identity and involvement pursuant to the November 18 Order and, such act could support a concealment finding under *Byrd*. However, the Court also considers the fact that MLIM identified other non-affiliated transferees and beneficiaries of certain commercial paper transactions pursuant to the November 18 Order. MLIM and MLIM Japan assert that MLIM did not disclose MLIM Japan under the November 18 Order because it did not consider MLIM Japan to fit into the categories of transferees or beneficiaries of the Transactions. As a result, they argue that MLIM never concealed the identity of MLIM Japan and, in fact, disclosed the related information to Enron in the Motion for Summary Judgment. Consistent with the Court's Rule 15(c)(3) analysis in a matter related to Lehman Brothers, Japan Inc. ("Lehman Japan"), the Court does not find that MLIM refused *repeatedly* to cooperate in providing information. *See Enron Corp. v. J.P. Morgan Sec. Inc. (In re Enron Corp.)*, 341 B.R. 460, 468 (Bankr.S.D.N.Y.2006), *clarified*, a reconsideration opinion.[4] Nor does the Court find that Enron made persistent efforts to obtain the concealed information. Except for the November 18 Order, Enron did not seek any discovery from MLIM within the statute of limitations. Therefore, the Court does not find that MLIM's failure to disclose MLIM Japan prior to the expiration of the statute of limitations supports an active concealment finding under *Byrd*. Further, the Court will not de-

---

3. In *Byrd*, plaintiff's counsel first requested disclosure of the name of the defendant. After the first request was rejected by the Corporation Counsel, plaintiff's counsel requested log books. *Byrd*, 964 F.Supp. at 143. The counsel's second request was rejected until "either Byrd agreed to bifurcate the trial or bifurcation was determined by motion to the Court." *Id.* "Despite the resolution of the

bifurcation issue, Corporation Counsel did not reveal the name of the individual officer, nor turn over log books, as had been requested by plaintiff's counsel." *Id.*

4. The reconsideration opinion was issued on December 13, 2006 and has not been assigned a formal citation at the time when this opinion is issued.

termine the issue as to whether MLIM violated the November 18 Order by not providing that information to Enron based upon its belief that MLIM Japan was not an initial transferee or beneficiary under a 550 recovery action[5] because Enron does not raise that issue independent of *Byrd.*

*The Barrow Case*

MLIM and MLIM Japan argue that Enron fails the mistake test under *Barrow* because Enron is attempting to correct a lack of knowledge of the identity of MLIM Japan through relation-back, not to correct a mistake. In *Barrow,* the court concluded that the "mistake" requirement was not satisfied if adding the new defendant was not to correct a mistake, but to correct a lack of knowledge. *Barrow,* 66 F.3d at 470.

The Court disagrees with MLIM's and MLIM Japan's interpretation and application of the *Barrow* case. First, the instant case is distinguishable factually from *Barrow.* The *Barrow* court was not confronted with a situation where a plaintiff did not know that the existing defendant might not be properly identified for each aspect of the transaction at issue. Nor was it presented with a situation where a plaintiff did not know the existence of a possible new defendant prior to the expiration of the statute of limitations. In *Barrow,* the

plaintiff knew that suing only the police department would not suffice because "[plaintiff] was informed by the court—within the limitations period ... that he needed to name the individual officers as defendants." *Barrow,* 66 F.3d at 470, as *modified,* 74 F.3d at 1367. Thus, the *Barrow* plaintiff knew that additional defendants (certain officers) must be named within the statute of limitations, even though he did not know the identity of the officers. *Id.* In contrast, MLIM and MLIM Japan concede[6] that Enron was not aware that there was an additional entity that it must name as a transferee regarding the Transactions at issue at the time of filing the First Amended Complaint. On March 25, 2004, after the statute of limitations expired, MLIM in the Motion for Summary Judgment disclosed the involvement of MLIM Japan in the Transactions. As a result, there is no dispute that Enron did not become aware of the identity of MLIM Japan until then. Such information was exclusively within the control of another defendant, MLIM. No evidence presented indicates that Enron would have known of the involvement of MLIM Japan in the Transactions from any source other than MLIM.

Second, in addition to factual differences from *Barrow,* the Court finds that

---

**5.** Section 550 of the Bankruptcy Code provides, in pertinent part, that

(a) the trustee may recover for the befit of the estate, the property transferred, or, if the court so orders, the value of such property, from—

(1) the initial transferee of such transfer or *the entity for whose benefit such transfer was made;*

11 U.S.C. § 550(a) (emphasis added). The Court accepts Enron's term "beneficiary" to represent "the entity for whose benefit such transfer was made." Other courts have accepted that terminology. See *Bonded Financial Services, Inc., v. European American Bank,* 838 F.2d 890, 895–96 (7th Cir.1988).

**6.** In MLIM and MLIM Japan's brief in opposition to the Motion for Leave to Amend, counsel did not dispute that Enron did not know of the identity of MLIM Japan at the time of filing the First Amended Complaint. *See* Merrill Lynch Investment Managers L.P.'s and Merrill Lynch Investment Managers Co., Ltd.'s Memorandum of Law in opposition to Enron Corp.'s Motion for Leave to Amend its Complaint Pursuant to Rule 15 of the Federal Rules of Civil Procedure, at 6, *Enron v. J.P. Morgan Securities Inc., et al.,* Adv. Pro. No. 03–92677 (Docket No. 1049) (stating that "[h]ere, there is no dispute that the reason Enron did not name MLIM Japan is that Enron did not know its identity").

MLIM's and MLIM Japan's interpretation of the *Barrow* case is too narrow. The *Barrow* court determined that correcting a lack of knowledge concerning the identity of the new defendant can not be characterized as a mistake when no mistake in identity was found and a plaintiff knew that such defendant must be named at the time of the original complaint. *Id.* (stating that "Rule 15(c) explicitly allows the relation-back of an amendment due to a 'mistake' concerning the identity of the parties (under certain circumstances), but the failure to identify individual defendants when the plaintiff knows that such defendants [individual officers rather than a department head] must be named cannot be characterized as a mistake"). Additionally, in its amended opinion, the *Barrow* court emphasized that the mistake requirement is fulfilled "when a defendant mistakenly sues an agency of the government without knowing that the cause of action requires the defendant to sue an agency head." *Barrow,* 74 F.3d at 1367. The *Barrow* court then found that the failure to name the new defendants due to lack of knowledge is not a mistake for the purposes of Rule 15(c) because the plaintiff did not "mistakenly believe that suing the police department, rather than a department head, would suffice." *Id.* Instead, the *Barrow* court found that the plaintiff was informed by the trial court that he needed to name the specific new defendants within the limitations period. *Id.* The focus in *Barrow* was simply whether the relation-back arose from a plaintiff's mistake in identity. Therefore, the focus of the analysis in the instant matter is on whether Enron is seeking to correct a mistake in identity through the use of the relation-back doctrine under Rule 15(c), as opposed to MLIM's and MLIM Japan's position that the analysis be limited to whether a relation-back has the effect of correcting a lack of knowledge.

### The Randall's Island case

The Court also disagrees with MLIM's and MLIM Japan's argument that the *Randall's Island* case is distinguishable from the instant matter.

In the instant matter, MLIM and MLIM Japan argue that *Randall's Island* is not applicable entirely because MLIM Japan acted as an investment adviser, not a transferee and/or beneficiary of the Transactions and there is no allegation that MLIM acted as an agent for MLIM Japan in the Transactions. Insofar as MLIM and MLIM Japan are making such assertion, the issues as to whether MLIM Japan was a transferee or beneficiary of the commercial paper transactions and whether MLIM was a "conduit" are before the Court.

In fact, in the Motion for Summary Judgment, MLIM argued that it was not a transferee because it did not exercise "dominion or control" over the proceeds of the alleged commercial paper transactions. In addition, MLIM in the Motion for Summary Judgment asserted that had MLIM Japan been named as a defendant in the First Amended Complaint, MLIM Japan would have raised the defense that it was not a transferee. In making that argument, MLIM did not raise a specific "conduit" defense for a 550 recovery action. However, it cited the leading "conduit" defense cases to support its proposition that it was not a transferee. *In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey,* 130 F.3d 52, 57–58 (2d Cir.1997), cert. denied, 524 U.S. 912, 118 S.Ct. 2295, 141 L.Ed.2d 154 (1998) and *Bonded,* 838 F.2d at 890–96. Further, it did not argue that its role of an investment advisor should be legally and factually treated differently from those "conduits" in those cases. In fact, even though

MLIM denied its involvement in Transactions, it conceded that MLIM acting as an investment advisor could use the proceeds in accordance with its investment management obligations under agreements with its client. Therefore, there was insufficient evidence for the Court to conclude whether MLIM acted without "dominion or control" as a "conduit" or an investment advisor in the alleged commercial paper transactions, including the Transactions. Regardless of whether MLIM's role was considered as a "conduit" or an "investment advisor," it is a contentious issue as to whether MLIM was a transferee or beneficiary of those alleged transactions. In the August 29 Opinion, the Court denied the Motion for Summary Judgment and found it would be premature to grant it prior to affording Enron an opportunity to conduct discovery for various facts that are within the control of MLIM. As a result, the issue as to whether MLIM was an investment adviser has not yet been determined pending Enron's discovery and the Court's resolution in a separate proceeding.

Similarly, in the instant matter, pending further discovery, it is uncertain whether MLIM acted as an agent for MLIM Japan in the Transactions. As discussed previously, there is no dispute concerning Enron's lack of knowledge regarding MLIM Japan at the time of filing the First Amended Complaint or within the statute of limitations. In addition, Enron has not had an opportunity to conduct discovery for various facts that were within the control of MLIM. It is understandable for Enron not to be aware of any agency relationship, among other things, between MLIM and MLIM Japan. However, Enron's motions for the November 18 Order and the May 13 Order requested that the Court required certain defendants to disclose information regarding any potential beneficiary and transferee of the Transac-

tions. Those motions demonstrate that Enron intended to name any transferee and/or beneficiary of the Transactions as "the initial or subsequent transferees" in a section 550 recovery action in the First Amended Complaint, including MLIM Japan, even if it was not aware of their identity, involvement and possible relationships with their affiliates.

Therefore, the common facts between *Randall's Island* and the instant matter include (1) there was no evidence to support that plaintiff(s) knew of added defendant's involvement in the alleged transactions, and (2) plaintiff(s) intended to recover from transferees of the alleged transfer(s). The *Randall's Island* court found that there was no evidence to support that the plaintiffs knew that such transferee was involved in the alleged transactions, but nonetheless decided to sue a "conduit" at the time of original complaint. *In re Randall's Island,* 2002 WL 31496229, at *3–5. In that case, they intended to recover from a transferee alleged preference payments they had made to a certain party. Initially, they mistakenly identified a "conduit" as the transferee and sought to add the correct transferee as a defendant upon discovering the misidentification due to their lack of knowledge. *Id.* That court concluded that the plaintiffs met the "mistake" test required by Rule 15(c)(3) after finding that the plaintiffs misidentified the new defendant—a transferee of the alleged transaction. *Id.* Hence, *Randall's Island* supports relation-back relief for Enron if Enron were ultimately found to have made a mistake in identifying MLIM as a transferee or a beneficiary of the Transactions and subsequently to correct a mistake by naming MLIM Japan as a defendant to the extent that it was an initial transferee or beneficiary.

Further, the Court finds that both *Randall's Island* and *Barrow* focused on the analysis concerning the correction of a mistake in identity. Therefore, the Court will focus on the issue as to whether Enron made a mistake in identity of MLIM Japan at the time of filing the First Amended Complaint, rather, on whether relation-back relief has the effect of correcting a lack of knowledge. In making that determination, the Court needs to consider two pertinent issues that *Randall's Island* did not address. *Randall's Island* did *not* address the issue in the context of a section 550 recovery action whether Rule 15(c) requires a plaintiff to replace an existing defendant with a new defendant. *Nor* did *Randall's Island* face a situation that an added defendant in a relation-back motion may have been a subsequent transferee. In addition to *Randall's Island* case, there is case involving the assertion of a "conduit" defense in a Rule 15(c) context from the United States Bankruptcy Court for the District of Columbia, *Alberts v. Arthur J. Gallagher & Co. (In re Greater Southeast Cmty. Hosp. Corp. I)*, 341 B.R. 91 (Bankr.D.D.C.2006), *modified*, 2006 WL 2083500 (Bankr.D.D.C. June 26, 2006) is instructive and persuasive on this matter.

## B. The *Alberts* Analysis

The *Alberts* court found that a plaintiff seeking a section 550 recovery action relies on the bankruptcy court's factual and legal determination as to whether an existing defendant was in fact, a transferee of the alleged transactions. *See Alberts*, 341 B.R. at 99–100. According to the *Alberts* court, depending on the bankruptcy court's determination, a mistake in identity could be found if the plaintiff mistakenly identified an existing defendant as a sole transferee of the alleged transactions in the original complaint. *Id.* Further, the *Alberts* court concluded in the context of a section 550 recovery action that (1) Rule

15(c) does not require a plaintiff to replace an existing defendant with a new defendant, and (2) Rule 15(c) allows a plaintiff to relate back an additional defendant whose alleged conduct was entirely not known to the plaintiff within the limitations period. *Id.* at 99–101.

(a) Rule 15(c) and the Role of the Existing Defendant

The *Alberts* case involved a bankruptcy proceeding in which plaintiff, debtor, sought to avoid and recover various payments he had already made to certain parties under sections 544, 547, 548, 549, and 550 of the Bankruptcy Code. *Id.* at 93–95. Initially, Alberts believed that defendant, Arthur J. Gallagher Co. ("AJG") was the sole initial transferee of each transaction under a section 550 recovery action. *Id.* After the statute of limitations expired, Alberts amended the original complaint to add under Rule 15(c) three other insurance companies to the original complaint after it was revealed through AJG's answer to Alberts's initial complaint that the other three insurance companies were involved in at least some of the debtor's payments. *Id.* In its answer, AJG raised a conduit defense with regard to at least some of the debtor's payments arguing that AJG was not the initial transferee but rather AJG served a mere conduit purpose, and alleged that the three new defendants were the initial transferees under section 550. *Id.* Accordingly, without dropping the existing defendant, Alberts sought to add the newly identified insurance companies as defendants in the case; in response, the insurance companies sought dismissal (through individual motions to dismiss) based on the expiration of the applicable statute of limitations. *Id.* The *Alberts* court found that a plaintiff seeking a section 550 recovery action relies on the bankruptcy court's factual and legal determina-

tion as to whether an existing defendant was, in fact, a transferee of the alleged transactions. *Id.* at 99–100.

In the instant matter, MLIM Japan filed an opposition to Enron's motion for leave to amend its petition to add the newly identified parties, including MLIM Japan. Though procedurally distinguishable, a comparison of the *Alberts* case to the instant matter is nevertheless appropriate because of the similarity in factual and legal questions involved. The *Alberts* case discussed a "conduit" defense raised by an existing defendant. Here, further discovery is required to determine whether there was an agent relationship, such as a "conduit-transferee" relationship, between MLIM and MLIM Japan. Further, in *Alberts,* there was no dispute that the existing defendant was involved in the transaction at issue, but, as a "conduit," if such were found in a separate proceeding, the existing defendant would not be liable for the transfer. Similar to the *Alberts* analysis, the instant matter involves a non-adjudicated issue as to whether an existing defendant, MLIM, was a transferee. MLIM would not be liable for the Transactions to the extent that MLIM were found not to be involved in the Transactions.

As discussed previously, it is essentially a legal issue whether MLIM had a "dominion or control" or legal authority over those proceeds and, therefore, qualified as a transferee or beneficiary of the Transactions. Therefore, there has not been a determination as to what extent MLIM may be a transferee and/or beneficiary under section 550. Thus, both in *Alberts* and the instant matter, the respective bankruptcy court will have to determine the extent to which the existing defendant was properly named as transferee and/or beneficiary. Such determination will form the basis of the resolution of the issue as

to whether a Rule 15(c) mistake can be established.

(b) Adding a New Defendant

■ The *Alberts* court reasoned, among other considerations, that (1) no precedent in its circuit requires a plaintiff to replace the existing defendant with a new one, and (2) a plaintiff seeking a section 550 recovery action will typically rely on the bankruptcy court to resolve the legal question as to the identity of the "initial transferee" within the section. As a result, the *Alberts* court concluded that whether Alberts made a mistake under Rule 15(c) for a relation-back depends on the court's resolution of the legal question as to the identity of the "initial transferee." *Id.* at 99. If after discovery, the court later determines that AJG was a mere conduit, not a transferee of the entire alleged preferential payment, Alberts made a mistake in naming AJG as the sole initial transferee. *Id.* at 99–100. If the court later determines that AJG was a conduit of a divisible portion of alleged preferential payment, then Alberts made a mistake to the extent that AJG was not an "initial transferee." *Id.* at 100. Under both situations, Alberts would substitute the three new defendants in place of AJG to the extent that AJG was a conduit. *Id.* However, the *Alberts* court held that to the extent that AJG was the initial transferee of the entire payment, "Rule 15(c)(3) may not be employed by Alberts to pursue the [three new defendants] under 11 U.S.C. § 550(a)(2) as subsequent ('immediate or mediate') transferees from AJG of same dollars for which AJG was the initial transferee. As to such transfers, Alberts did not make a mistake in suing AJG as liable." *Id.* at 99.

In the instant matter, as discussed previously, Enron intended to name every transferee and/or beneficiary of the Transactions as "the initial or subsequent trans-

ferees" in a section 550 recovery action in the First Amended Complaint, including MLIM Japan, even if it was not aware of their identity and involvement. There are unresolved issues pending a further proceeding with respect to the roles of MLIM and MLIM Japan in Transactions, including whether they (1) exercised dominion and control over the payments (2) had legal title to the payments, (3) had discretion or authority with the payments, (4) benefited from the payments and (5) were the intended beneficiaries of the payments. In the absence of the determination of these issues, as discussed previously, no final conclusion as to whether MLIM or MLIM Japan was an initial transferee in the Transactions can be reached.

MLIM and MLIM Japan argue that Enron cannot claim that it mistook MLIM for MLIM Japan because Enron is not requesting to replace MLIM with MLIM Japan. With respect to Enron's request in its amendment that MLIM and MLIM Japan remain as co-defendants, the Court has not found any Second Circuit precedent stating the proposition that relation-back applies on the prerequisite that a plaintiff *must* replace or drop an existing defendant with adding a new one in the complaint. On the contrary, the Second Circuit allows relation-back of an additional defendant to the extent that a mistake in identity of an existing defendant's role in the same transaction occurred. *See VKK Corp. v. National Football League,* 244 F.3d 114, at 128–29 (2d Cir.2001). The *VKK* court permitted an additional new defendant "TJI" to replace the existing defendant "TJL", an affiliate of "TJI", in some of the allegations that were not meant to be directed to "TJL." *Id.* Both "TJI" and "TJL" remained as co-defendants in the complaint arising out of the same transaction. *Id.* Moreover, the Court also agrees with the *Alberts* court to the effect that the "plain language of Rule

15(c)(3)" does not require that an existing defendant be replaced by a new defendant and such requirement would be a much too "narrow" interpretation of the meaning of the rule. *Alberts,* 341 B.R. at 99.

As mentioned in *Alberts,* the Third Circuit, the Fourth Circuit and the Sixth Circuit require a plaintiff to replace an existing defendant when seeking a relation-back under Rule 15(c)(3). *Id.* (citing *Leitch v. Lievense Ins. Agency, Inc. (In re Kent Holland Die Casting & Plating, Inc.),* 928 F.2d 1448, 1449 (6th Cir.1991); *Miracle of Life, LLC v. North American Van Lines, Inc.,* 368 F.Supp.2d 499 (D.S.C. 2005); *Hechinger Liquidation Trust v. Cooper Bussmann, Inc. (In re Hechinger Investment Co. of Delaware),* 297 B.R. 390 (Bankr.D.Del.2003)). However, those cases did not discuss Rule 15(c) in scenarios involving a transferee or beneficiary under section 550 where a new defendant and existing defendant might be determined to be co-defendants because the existing defendant was correctly named as to certain aspects of the transactions at issue but misidentified as to other aspects of such transactions. Nor did they address the issue of whether the existing and new defendant should remain in the proceeding until a final determination is made regarding the identity of the transferee and/or beneficiary. After such determination is made, to the extent that the existing defendant were found to be misidentified as a transferee and/or beneficiary arising from the same transaction, the added defendant would replace it, in whole or in part, in the complaint. *See VKK,* 244 F.3d 114, at 128–29.

For purposes of the Rule 15(c) motion before the Court, under two scenarios set forth below, Enron meets the criteria for a mistake under Rule 15(c) if it had legally and/or factually misidentified MLIM to the extent that MLIM were not an initial

transferee and/or beneficiary of the Transactions in the First Amended Complaint. As referenced above, whether MLIM Japan was a sole or partial transferee and/or beneficiary of the Transactions would be the subject of a second proceeding. MLIM Japan can raise any of the same defenses that could have been advanced by MLIM concerning its role in the Transactions. The burden of proof analysis is similar to the analysis applied by the *Alberts* court; there, the court found that "[i]t is likely [the] burden [of the defendant asserting the conduit defense]—not [the plaintiff's]—to demonstrate the applicability of [a] mere conduit defense." *Alberts,* 341 B.R. at 99. Thus, the burden of proving that MLIM or MLIM Japan was not a transferee and/or beneficiary of the Transactions shifts to MLIM or MLIM Japan.

First, if MLIM Japan were determined to be a sole or partial initial transferee or beneficiary of the Transactions, naming MLIM Japan as a defendant would correct a mistake to the extent that MLIM was not an initial transferee and/or beneficiary, thereby replacing MLIM with MLIM Japan as a defendant to the extent that MLIM Japan was involved in the Transactions as a sole or partial initial transferee or beneficiary.

Second, a determination could be made that MLIM was not an initial transferee but a beneficiary or *vice versa.* It may be determined that an existing defendant, MLIM, was a beneficiary not a transferee under section 550. An entity may not be found to be a section 550 transferee and a section 550 beneficiary simultaneously because it is settled that the section 550 terms "transferee" and "beneficiary" have been held to be mutually exclusive. *See Bonded,* 838 F.2d, at 895–96; *see also In re KZK Livestock, Incorp.,* 1999 WL 594738, at *2, U.S.App. LEXIS 18703, at p. 6 (7th Cir. August 3, 1999). To be a

section 550 beneficiary, an entity "received the benefit but not the money." *Id.* Such beneficiary could be a guarantor or debtor ("[i]n the Firm–Guarantor–Lender example, when Firm pays the loan, Lender is the initial transferee and Guarantor, which no longer is exposed to liability, is the 'entity for whose benefit.'") *Id.* The *Bonded* court set forth a hypothesis that if a debtor had sent a check to the bank with instructions to reduce a guarantor's loan, the bank would have been the initial transferee and the guarantor would have been a 550 beneficiary. *Bonded,* 838 F.2d, at 895–96. Thus, in the instant matter, MLIM, if determined as a beneficiary, would remain as a defendant in the lawsuit while MLIM Japan determined as an initial transferee, could be added under the theory that there was a misidentification in the role of the existing defendant, MLIM, as an initial transferee as opposed to a beneficiary. Enron would then meet the criteria for a mistake under Rule 15(c) and, therefore, MLIM and MLIM Japan would remain as co-defendants in the lawsuit.

However, in three other scenarios, Enron does not meet the criteria for a mistake under Rule 15(c) due to not correcting a mistake in identity of MLIM in the First Amended Complaint. First, after a second proceeding, both MLIM and MLIM Japan could be ultimately determined not to be a transferee and/or beneficiary of the Transactions. Second, another possible outcome would be if the Court found that MLIM was a sole transferee and beneficiary of the Transactions, or, if MLIM Japan was merely a "conduit." Third, in any scenario, if MLIM Japan were determined to be a subsequent transferee, as set forth in *Alberts,* Enron cannot use Rule 15(c) relation-back to pursue MLIM Japan as a subsequent transferee or subsequent beneficiary from MLIM's transfers within the context of a section

550 recovery action. *See Alberts*, 341 B.R. at 100. Rather, Enron would resort to the statute of limitations under section 550(f).[7] Therefore, if MLIM Japan were to be named as a defendant because of its role as a subsequent transferee or subsequent beneficiary from MLIM's transfers, no mistake is found.

Because each scenario is possible, denying Enron's request to amend its complaint by adding MLIM Japan, at this juncture, would leave Enron "vulnerable" to any "non-transferee" defense asserted by MLIM when a mistake arising from its lack of knowledge regarding MLIM Japan in a section 550 recovery action could be determined pending a second discovery. *See Id.*[8] (stating that "the mere conduit defense thus leaves plaintiffs unusually vulnerable to mistakes arising from their lack of knowledge that anyone other than the initial recipient of a transfer is a potential target of the § 550 recovery action").

### (c) Lack of Knowledge

The *Alberts* court is additionally instructive in its explanation of the distinction between a plaintiff who knows the involvement of the new defendant prior to the running of the statute of limitations and one that does not know of the "possible existence during that limitations period." *Alberts*, 341 B.R. at 101 (citing *Arthur v. Maersk, Inc.*, 434 F.3d 196, 209 (3d Cir. 2006)). Specifically, because Alberts sought to file suit against all initial transferees in his original complaint and "to the

extent that AJG was a mere conduit [and] the [three insurance companies] were the initial transferees and hence the only appropriate defendants to sue," Alberts' lack of knowledge as to the existence of the three insurance companies in filing the complaint would be considered a mistake under Rule 15(c). *Alberts*, 341 B.R. at 101 (stating that "Alberts' lack of knowledge led to his mistake in not suing them, thus making Rule 15(c)(3)(B) applicable."). Further, the *Alberts* court explained as follows

Here, Alberts did not simply fail to identify a theory of liability upon which a party known to him could also be named as a defendant. Rather, only upon revelations made by AJG in its answer to the complaint did Alberts become aware that *a conduit relationship might exist between AJG and the Added Defendants that would make those Added Defendants the actual "initial transferees" of the dollars transferred within the meaning of § 550(a)(1).*

*Id.* at 104 (emphasis added). In its reconsideration opinion, the *Alberts* court clarified that Alberts' lack of knowledge referred to the existence of the added defendants within statute of limitations and to the *possible* conduit relationship between an original defendant and the added defendants. *Alberts*, 2006 WL 2083500, at *2. That court further explained that "the lack of knowledge the court deems relevant" is plaintiff's knowledge of a *possible* relationship or connec-

---

7.  Under section 550(f), an action to recover avoided transfers of property must be brought no later than the earlier of one year after the transfer was avoided or the date the case is closed or dismissed. 11 U.S.C. § 550.

8.  The *Alberts* court further explains that
    Mere conduit defenses such as that raised by AJG typically alter liability based on the happenstance of the legal obligation gov-

erning the initial recipient's subsequent transfer of the subject funds to third parties, of which the bankruptcy trustee commonly has no direct knowledge. It is on that basis alone that § 550 liability, in instances such as this, then becomes splintered among several parties notwithstanding that the subject transfer was made to only one individual. *Alberts*, 341 B.R. at 99.

tion between added defendants and original defendants, or, between the debtors and added defendants "sufficient to put plaintiff on notice" that the added defendants "might in some way be connected to the transfers" of the alleged transactions. *Id.* n. 1. Here, no evidence is presented that Enron received notice that there might be a *possible* relationship or connection between MLIM and MLIM Japan regarding the transfers at issue. Further, as discussed previously, there is no dispute that Enron did not know MLIM Japan's involvement until MLIM raised its "non-transferee" defense in the Motion for Summary Judgment.

The *Alberts* court's analysis is consistent with *Randall's Island,* in that both permitted the plaintiffs to relate back an added defendant whose involvement in the alleged transactions was entirely unknown to the plaintiffs within the statute of limitations. *See In re Randall's Island,* 2002 WL 31496229, at *3–5. *Randall's Island* is distinguishable from those cases where the plaintiff knew everything he needed to know to name the added party timely and could not rely on any *subsequent factual discovery* to satisfactorily explain the failure to do so. *Id.*

Further, the *Barrow* analysis does not preclude the Court from granting Enron's Motion for Leave to Amend against MLIM Japan to the extent that MLIM Japan was not an initial transferee or beneficiary of the Transactions. As discussed previously, the *Barrow* analysis focused on whether a plaintiff made a mistake in identity when the plaintiff was aware that the new defendants actually existed but he did not know their identities. The *Alberts* court did not follow *Barrow's* ruling on the basis of a factual distinction, not a different legal interpretation of Rule 15(c)(3). *Alberts,* 341 B.R. at 103. n. 14 (reasoning that "[t]he lack of knowledge alleged by the

trustee in this case is more fundamental in nature, and goes to the very existence of additional parties coming within the orbit of this § 550 action. Without any knowledge concerning post-transfer transactions between AJG and third parties, Alberts had no basis upon which to believe any party other than AJG was the initial transferee"). Here, the Court finds that Enron, based upon MLIM's own assertion, made a mistake in identity in MLIM's involvement in the Transactions and, therefore, Enron is correcting a mistake in identity by relating back MLIM Japan to the extent that it were involved in the Transactions, rather than simply correcting a lack of knowledge.

Such finding is consistent with the Court's finding in another matter related to Lehman Japan. *See In re Enron Corp.,* 341 B.R. 460, 465–68, *clarified,* in a reconsideration opinion. In *Enron,* the Court denied relation-back relief for Enron on the grounds, among the others, that (1) no mistake in identity in Lehman Japan was found and (2) Enron had sufficient information to name the initials of Lehman Japan as a defendant within the statute of limitations. *Id.* As a result, the Court concluded in *Enron* that *Barrow* applies because Enron simply corrected a lack of knowledge concerning the complete name of Lehman Japan without correcting a mistake in identity. *Id.* In the instant matter, Enron's lack of knowledge led to its possible mistake in identifying MLIM as a defendant; therefore, to the extent that Enron necessarily seeks to remedy its mistake in identifying MLIM, there is also an effect of correcting its lack of knowledge regarding the role of MLIM Japan. However, relation-back, with an effect of correcting plaintiffs' lack of knowledge regarding added defendants, alone does not automatically render the conclusion that such relation-back conflicts with *Barrow's* holding. Instead, the Court will examine

whether a mistake in identity occurred. Here, such mistake is found if Enron misidentified MLIM as a sole or partial initial transferee and/or beneficiary and would replace MLIM with MLIM Japan to the extent that MLIM Japan were a sole or partial initial transferee. Therefore, the Court adheres to the legal principle under *Barrow* that the mistake requirement is fulfilled when a mistake in identity of an existing defendant occurred. *See Barrow,* 74 F.3d at 1367 (stating that a Rule 15(c)(3) mistake is met "when a defendant mistakenly sues an agency of the government without knowing that the cause of action requires the defendant to sue an agency head ... mistakenly believe that suing the police department, rather than a department head, would suffice"). Therefore, the Court does not depart from *Barrow's* analysis, albeit recognizing the factual distinctions between *Barrow* and the instant matter identified previously.

In conclusion, failure to name MLIM Japan within the limitations period is found to be a mistake under Rule 15(c) to the extent that it were determined to be an initial transferee and/or beneficiary as a result of Enron's complete lack of knowledge with regard to MLIM Japan's connection to the Transactions.

## II. Prejudicial Effect

■ MLIM Japan argues that the prejudice it suffered as a result of Enron's undue delay in filing its motion to amend is yet another reason why Enron should be denied the motion to amend. The delay to which MLIM Japan refers is the time between March 25, 2004 (the date of MLIM's Motion for Summary Judgment in which the identity of MLIM Japan was revealed), and October 19, 2005 (the date of Enron's motion to amend).

The cases cited by MLIM Japan are distinguishable from circumstances as presented in the instant matter. Specifically,

MLIM Japan cites *Kilkenny v. Arco Marine Inc.,* 800 F.2d 853 (9th Cir.1986) and *In re Worldcom, Inc. Sec. Litig.,* 2004 WL 2889974, 2004 U.S. Dist. LEXIS 25125 (S.D.N.Y. Dec. 15, 2004) as cases reinforcing MLIM Japan's claim that the undue delay should be grounds for denial of Enron's motion. However, those cases are distinguishable from the instant matter. In each of those cases, the plaintiff requesting to add the new parties to the complaint under Rule 15(c) knew the identities of the proposed defendants prior to the expiration of the statute of limitations. *See Kilkenny,* 800 F.2d at 856 (citing that an original defendant provided plaintiff with the names of the defendants, plaintiff sought to add prior to the running of the statute of limitations); *see In re Worldcom,* 2004 WL 2889974 at *6, 2004 U.S. Dist. LEXIS 25125 at *21 (citing that the defendants plaintiff sought to add appeared on numerous pleadings prior to the expiration of the statute of limitations). In the instant matter, there has been no evidence presented to the Court to indicate that Enron knew of the existence of MLIM Japan prior to March 25, 2004, more than three month after the expiration of the statute of limitations.

MLIM Japan also cites *Lundy v. Adamar of New Jersey, Inc.,* 34 F.3d 1173 (3d Cir.1994), *Gollinger v. Dreyfus Realty Advisors, Inc.,* 1997 WL 563394, 1997 U.S. Dist. LEXIS 13589 (E.D.Pa. Sept. 2, 1997) and *Campbell v. Ward,* 792 F.Supp. 1150 (E.D.Mo.1992) as cases which support its argument that Enron's undue delay in filing its motion to amend should be grounds for denial of the motion. However, those three cases are also not directly relevant because the proposed defendants in those cases were found to not have received sufficient notice of the claim in *Campbell* and *Gollinger,* and any notice in *Lundy,* within the required time period pursuant

to Rule 15(c)(3). *See Lundy*, 34 F.3d at 1177 (citing that the new defendant did not receive notice within the 120 day period as required by Rule 4(m)); *see Gollinger*, 1997 WL 563394 at *3–4, 1997 U.S. Dist. LEXIS 13589 at *10 (citing that the new defendant did not receive sufficient notice); *see Campbell*, 792 F.Supp. at 1152 (citing that the new defendant did not receive actual notice). By contrast, in the instant matter, MLIM Japan concedes that it received actual notice on September 29, 2004, which was within the extended time for service allowed pursuant to the Motion for Extension of Time.

MLIM Japan also argues that the more than six-month delay between March 25, 2004 (the date at which Enron found out of the existence of MLIM Japan), and September 29, 2004 (when Enron sent MLIM Japan actual notice of its intention to file the claim) should be taken into consideration with the undue delay argument. However, this contention lacks merit because "[w]hen the [a]dded [d]efendants [are] served . . . within the period allotted under Rule 4(m) as extended by the court, the [a]dded [d]efendants [are] put on express notice that they [are] now named as defendants in [the] action." *Alberts*, 341 B.R. at 104. Similarly, in the instant matter, an actual notice rather than a constructive notice was received by MLIM Japan. Based upon this fact, the Court finds that MLIM Japan knew Enron was pursuing claims against it within Rule 4(m) period extended by the Court. The following reasoning from the *Alberts* court is persuasive regarding MLIM Japan's undue delay arguments

If not already apparent that the late-filed amendment was the product of Alberts' prior mistake in identifying the initial transferee, upon reasonable inquiry the Added Defendants could easily have ascertained that they were added as defendants only after AJG asserted its mere conduit defense, which then put Alberts on notice that he had made a mistake, and caused him to amend his complaint.

*Id.*

Therefore, because actual notice to MLIM Japan came within the time allotted under Rule 4(m) as extended by the Court and there has been no evidence presented by MLIM Japan of any prejudice that it suffered as a result of any delay between the actual notice under Rule 4(m) and motion to amend, the Court finds that MLIM Japan was not prejudiced as a result of the delay. Such finding is consistent with the policy behind Rule 15(c). The *Kilkenny* court stated that "[r]ule 15(c) was never intended to assist a plaintiff who ignores or fails to respond in a reasonable fashion to notice of a potential party." *Kilkenny*, 800 F.2d at 857–58. Here, the Court finds that Enron acted in a reasonable fashion by providing actual notice to MLIM Japan within the Rule 4(m) period extended by the Court.

## CONCLUSION

The Court concludes that Enron has met its burden to satisfy the requirement under Rule 15(c)(3)(A) by providing actual notice within the Rule 4(m) period extended by the Court so that MLIM Japan will not be prejudiced in maintaining a defense on the merits.

As to the second requirement under Rule 15(c)(3)(B), failure to name MLIM Japan within the limitations period is found to be a mistake under Rule 15(c) to the extent that it were determined to be an initial transferee and/or beneficiary as a result of Enron's lack of knowledge with regard to MLIM Japan's connection to the Transactions. In addition, *Barrow's* holding would not preclude the Court from permitting relation-back if a correction of a mistake in identity of MLIM Japan, not a correction of lack of knowledge, were

made by Enron. If such correction of mistake were found, because the Court has determined that there was no dispute that Enron lacked of knowledge concerning MLIM Japan at the time of filing the First Amended Complaint, case law, such as *Randall's Island* and *Alberts,* would support relation-back relief sought by Enron.

Pending a further determination as to whether the amended complaint relates back to the First Amended Complaint, precluding MLIM Japan at this juncture from being a defendant who may be ultimately found to be an initial transferee is premature when it is not disputed that Enron had no knowledge concerning MLIM Japan's role in the transaction within the statute of limitations. The Court is also mindful of the consequences of not allowing MLIM Japan to be conditionally named as a defendant. One of the consequences would be that MLIM Japan could not actively participate as a party in discovery and motion practice as to matters that could ultimately affect its liability. Also, Enron would not have the same rights to obtain information from an entity that is only a third party, and not a defendant. Hence, for the purposes of facilitating Enron's discovery efforts and completing the further determination that will decide the roles of MLIM and MLIM Japan in the Transactions, the Court grants Enron to file an amended complaint concerning MLIM Japan to the extent that MLIM Japan were determined to be an initial transferee and/or beneficiary. This ruling is not a final determination as to whether the Second Amended Complaint related to MLIM Japan relates back to the First Amended Complaint.

The Debtor is to settle an order consistent with this opinion.